THE GERMANIA LIFE INSURANCE COMPANY

*v.*

ELIZABETH KOEHLER.

*Opinion filed November 1, 1897.*

1. INSURANCE—*effect of breach of condition in life policy as to avoiding same.* A breach of a condition in a life insurance policy against the insured residing in certain territory will not render the policy absolutely void but merely voidable, although the policy provides that it will render the policy null and void.

2. SAME—*when an agent's knowledge will be imputed to the company.* Knowledge received by an insurance agent empowered to receive payments of premiums on policies at or before the time they become due, of a breach of the policy by the insured which would render the policy voidable at the company's election, will be imputed to the company.

3. SAME—*when breach of policy will be deemed waived.* Receipt by an insurance company of premiums paid to the insurance agent after he had knowledge that the insured was residing in territory forbidden by the policy under penalty of forfeiture, will operate as a waiver by the company of the breach.

*Germania Life Ins. Co.* v. *Koehler,* 63 Ill. App. 188, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of St. Clair county, the Hon. A. S. WILDERMAN, Judge, presiding.

This is an action of assumpsit, begun in 1884 by the appellee against the appellant company upon a policy of life insurance, issued on March 21, 1866, at Belleville in St. Clair county, upon the life of one Jacob Kaysing, at that time the husband of appellee. The amount of the policy was $2000, payable to Elizabeth Kaysing, then the wife of said Jacob Kaysing. Jacob Kaysing died on September 4, 1876, at Houston in the State of Texas. After his death his widow, Elizabeth Kaysing, married a man by the name of Koehler. Pleas were filed to the declaration, as originally drawn and as subsequently amended. Replications were filed to the special pleas,

and rejoinders to the replications. The case was tried before the court and a jury, and resulted in verdict and judgment in favor of the plaintiff below for $4000, being the amount named in the policy and interest thereon, together with the costs of the suit. An appeal was taken from this judgment to the Appellate Court. The latter court has affirmed the judgment, and the present appeal is prosecuted from such judgment of affirmance.

It is declared in the policy, that the same was accepted "under the express condition, that the same shall cease and be null, void and of no effect, and that this company shall not be liable for the payment of the sum assured, or any part thereof, but that all premiums previously paid shall be the absolute property of the company without any account whatever to be rendered therefor, * * * if the person, upon whose life insurance is taken, shall visit between the first of July and the first of November * * * the limits of the United States which lie south of the southern boundaries of Virginia, Kentucky, Missouri and Kansas, * * * without having previously obtained and had endorsed upon this policy the consent of the company for any of these visits, residences," etc.

At the bottom of the policy was written the following: "General agents, holding an appointment from the company, are authorized to receive premiums at or before the day when due upon the receipt of the president or secretary of the company, but not to make, alter or discharge contracts or waive forfeitures."

The second plea of the defendant sets up, that Jacob Kaysing did between July, 1875, and November, 1875, and July 1, 1876, and November 1, 1876, visit and reside in the State of Texas, south of the southern boundaries of the States above named, and that he died in the State of Texas, in September, 1876. The replication to the second plea avers, that, from March 21, 1874, to his death Jacob Kaysing resided in Texas, and that, during such residence, the plaintiff, by her agent, informed the de-

fendant of such residence in Texas; that the defendant did not object, nor intimate that the condition of the policy sued on was violated for that reason; that the plaintiff, believing that a forfeiture of the condition was waived by the defendant, paid the semi-annual premiums of $45.24 due on March 21, 1874, September 21, 1874, and March 21, 1875; that, at the times of such payments, the appellant was informed and had knowledge of such residence in Texas, and made no objection thereto, and received the premiums so paid, and delivered to plaintiff its receipts therefor.

Upon the trial the plaintiff introduced in evidence a large number of receipts for the premiums paid to the company, beginning with September 21, 1866. These receipts are all made out in the same form and upon the same kind of blank. The receipts executed for the payments of premiums, made on March 21, 1875, September 21, 1875, and September 21, 1874, as well as all the other receipts, are dated at Belleville, Illinois, and signed by C. Doremus, secretary, and countersigned by George Vanderschmidt, agent. At the foot of each receipt are printed the following words, to-wit: "Agents, holding an appointment from the company, are authorized to receive premiums at or before the time when due upon the receipt of the president or secretary of the company, but not to make, alter or discharge contracts or waive forfeitures. This receipt is not valid until countersigned by the agent of the company." There was also introduced in evidence a certificate signed by the Auditor of Public Accounts of the State of Illinois, dated March 12, 1874, certifying, that there had been filed in his office a sworn statement, showing the condition of the Germania Life Insurance Company located at New York, and also certifying that George Vanderschmidt of Belleville, "having been appointed by the proper officers of said company is hereby authorized to transact business according to law for said company in the State of Illinois until the first

day of March, 1875, as their agent." There is also a certificate of Vanderschmidt's re-appointment to March 1, 1876. The last premium paid upon the policy was paid on September 21, 1875, at which time it appears, and it was then so announced by the company's agent to plaintiff's agent, that the policy was fully paid up.

In May, 1873, Kaysing and his wife borrowed $1000 from one George Mueller, and assigned the policy to George Mueller as collateral security. Solomon Mueller, the brother of George, sometimes acted for his brother, and for appellee, in making the payments of the premiums to the agent at Belleville while the Kaysings were residing in Texas.

GEORGE C. REBHAN, and TURNER & HOLDER, for appellant:

Where the assured has notice of any limitation upon the agent's power, or where there is anything about the transaction to put him on inquiry as to the actual authority of the agent, acts done by him in excess of his authority are not binding. Bacon on Life Insurance, (ed. of 1894,) sec. 158; *Insurance Co.* v. *Langley*, 63 Md. 196.

An insurance company has the right to limit the powers of its agents, and when it does impose such limitations upon their authority, in a way that no prudent man ought to be mistaken in reference thereto, it is not bound by an act done by its agents in contravention of such notice. Wood on Insurance, sec. 387; *Lawrence* v. *Johnson*, 64 Ill. 351; *Insurance Co.* v. *Holzgrafe*, 53 id. 516; *Insurance Co.* v. *Webster*, 69 id. 392; Bacon on Life Insurance, (ed. of 1894,) sec. 424; *Insurance Co.* v. *Fletcher*, 117 U. S. 519.

The forfeiture of a contract or a condition which is essential to the continuance of a contract cannot be waived by an agent, when the contract itself declares that he shall not have power to waive it. Bacon on Life Insurance, secs. 431, 431*a; Miller* v. *Insurance Co.* 110 Ill. 102; *Insurance Co.* v. *Ruckman*, 127 id. 364.

Frederick H. Bacon, also for appellant:

The notice or knowledge which shall be implied to the principal is only that which relates to the subject matter of that agent's authority,—or, in other words, is that only which relates to the business or transaction in reference to which that agent is authorized to act by and for the principal.    Mechem on Agency, sec. 718.

The knowledge of a mere agent, unauthorized to represent the company beyond the specific powers committed to him, cannot be the ground of estoppel in a matter unconnected with his powers.    *Bard* v. *Insurance Co.* 25 Atl. Rep. 1124.

Even a general agent cannot waive the provisions of the policy regarding other insurance, if by the terms of the policy an indorsement on the policy is required.    *Parker* v. *Insurance Co.* 39 N. E. Rep. 177.

A mere soliciting agent cannot waive the breach of a condition.    *Miller* v. *Insurance Co.* 110 Ill. 102; *Bernard* v. *Insurance Co.* 32 N. Y. Supp. 223; *Insurance Co.* v. *Ruckman*, 127 Ill. 364; *Insurance Co.* v. *Langley*, 63 Md. 196; *Messelback* v. *Sun Office*, 122 N. Y. 578; Biddle on Insurance, sec. 1074.

William Winkelmann, for appellee:

Notice to an agent of any fact connected with the business in which he is employed is notice to the principal.    *Bank* v. *Schott*, 135 Ill. 669.

A provision in a policy that it shall become void in a certain event, being for the benefit of the insurer, may be waived by him.    *Insurance Co.* v. *Armstrong*, 145 Ill. 469.

Mr. Justice Magruder delivered the opinion of the court:

Among the errors assigned by the appellant, those mainly relied upon are the giving of the first and second instructions which the trial court gave for the plaintiff, and the refusal of the second instruction which the court was asked to give on behalf of the defendant below.    The

giving and refusal of these instructions raise the question, whether, under the facts of this case, there was a waiver by the appellant company of the condition in the policy forbidding the insured to visit or reside in the State of Texas at any time during any year from July 1 to November 1. It is claimed by the appellee, that there was such waiver, while the appellant contends that, if anything in the evidence tends to show a waiver, it was a waiver by an agent of the company who had no authority to make the same, and therefore was not binding upon the company.

The evidence shows substantially the following facts in regard to the payments of the last three premiums upon the policy: Solomon Mueller went to Vanderschmidt, the agent, in September, 1874, to pay the premium due on the twenty-first day of that month, and at that time told Vanderschmidt, that Kaysing was in the South; Vanderschmidt said that was all right; he received the premium at that time paid to him by Solomon Mueller, and delivered to Mueller a receipt, signed by Doremus as secretary, and countersigned by Vanderschmidt as agent; in March, 1875, Solomon Mueller again went to Vanderschmidt, and paid him the premium due upon the twenty-first day of that month, which was accepted, and a similar receipt to that last above named was executed and delivered to Mueller, as the agent of George Mueller and the Kaysings; at that time Vanderschmidt asked Mueller where Jacob Kaysing was, and Mueller replied that he was down in Texas; Vanderschmidt then said, "It will not make any difference where he is;" in September, 1875, Mueller again went to Vanderschmidt, and paid him the semi-annual premium due on the twenty-first day of that month; after he had paid him, Vanderschmidt spoke up, and said: "Is he down there yet?" Mueller said, "Yes, he is down there yet in Texas;" Vanderschmidt said, "Mueller, you have a paid up policy, you have no more to pay now."

The defense made by the company is, that the authority of Vanderschmidt, as agent, was a circumscribed and limited authority; that he was only authorized to receive premiums, and not to make, alter or discharge contracts or waive forfeitures; that he, therefore, had no power to waive the breach of the condition in regard to residence in Texas; that the terms of the limited authority possessed by the agent were in writing, and were attached to the policy, and also to the premium receipts, and that thereby the insured had notice of the limited nature of the agent's authority; that the insured was not protected by anything said by the agent of the company, inasmuch as the insured did not previously obtain and have endorsed upon the policy the consent of the company to such residence in Texas. We are unable to agree with the contention thus made on behalf of the appellant.

The appellant was a foreign insurance company. It had an agent, named Vanderschmidt, in Belleville, Illinois, who was authorized by the State Auditor to transact business for it according to law in Illinois. The testimony shows, that this agent had authority to receive applications for insurance, deliver policies, receive premiums, and countersign receipts for premiums paid to the company. It is claimed, that, because his authority was limited to the receipt of premiums, it did not include the right to alter or change the contract, or waive a forfeiture or breach of condition. The appellee does not insist, and the instructions do not assert, that the waiver of the breach of the condition, which forbade the insured to reside in Texas within the specified months, was made by the agent at Belleville, but that it was made by the company itself. The evidence shows clearly, that the agent at Belleville had notice that the insured was residing in Texas. This notice to its agent was notice to the company of the fact of such residence. It is true, that the rule, which imputes to the principal the knowledge possessed by the agent, applies only to cases, where

the knowledge is possessed by an agent within the scope of whose authority the subject matter lies. In other words, notice to an agent, which is held to be notice to the principal, must be notice of such facts, as are connected with the business in which the agent is employed. (*Mullanphy Savings Bank* v. *Schott*, 135 Ill. 655). Here, when Vanderschmidt received notice of the residence of the insured in Texas, he received notice of a fact which was connected with his business. He had authority to receive premiums "at or before the time when due upon the receipt of the president or secretary of the company." It was his duty, therefore, before receiving such payments of premiums to determine whether they were due to the company or not. The policy provides upon its face, that it shall be null and void, if the condition in regard to residence is violated. In *Manufacturers and Merchants' Ins. Co.* v. *Armstrong*, 145 Ill. 469, we held, that a provision in a policy of insurance, to the effect that it should become void in a certain event, will not render the policy absolutely void upon the happening of such event. It cannot, therefore, be said that the taking up of his residence in Texas by Kaysing within the forbidden time, without the consent of the company endorsed upon the policy, made the policy absolutely void. But it entitled the company, and the company had the right, to declare it void for such breach of the condition. So long as it was yet undetermined, whether the company would declare the policy forfeited for the breach of the condition or not, it was not certain that the premium was actually due, and, therefore, it was not certain that the agent had any right to receive the premium. It was, consequently, the duty of the agent to communicate with the company, as soon as he had notice of the violation of the condition, and ascertain from the company whether or not a forfeiture was to be enforced. His own duty in regard to the receipt of the premium depended upon the action of the company in regard to the forfeiture. There-

fore, the notice, which he received of the residence of the insured in Texas, was notice of a fact, which was directly connected with the business, in which he was engaged, of receiving premiums for the company. Moreover, the policy provided, not only that it would be null and void in case of such a forbidden residence without the consent of the company, but it also provided, that "all premiums previously paid shall be the absolute property of the company without any account whatever to be rendered therefor." It will thus be noticed that it was only the premiums previously paid, that is to say, paid before the breach of the condition, which were to become the absolute property of the company. The breach of the condition did not authorize the company to retain the premiums paid after the breach, if there was an intention to declare a forfeiture on account of the breach. The agent had knowledge of the conditions of the policy, and of the terms of his authority as embraced in the receipt. He, therefore, knew that the company had no right to keep, as its absolute property, premiums paid after the breach of the condition, if it intended to declare a forfeiture by reason of the breach of the condition. Here, the evidence shows, that the agent received three semi-annual premiums after he had notice, that the deceased was residing in the State of Texas. These premiums were forwarded to the company, and the company, which was affected with notice of the breach by reason of the notice to its agent, received the premiums, and forwarded to its agent in Illinois a receipt signed by its secretary in New York. By receiving the premium in New York, and by forwarding a written receipt therefor, after notice to its agent that there was a breach of the condition, the company itself is chargeable with a waiver of the condition. It is not necessary to hold, that the waiver was that of the agent in Illinois, but in view of the facts stated it was a waiver by the company itself.

It is well settled, that such conditions, as are here under consideration, are for the benefit of the insurer, and, therefore, the insurer can waive them. (*Phenix Ins. Co.* v. *Hart*, 149 Ill. 513, and cases therein referred to.)

It is said, however, by counsel for appellant, that it was the duty of the insured to inform the company at its office in New York of his residence in Texas, or to request the Illinois agent to give such notice to the company. We think that, under the circumstances, it was the duty of Vanderschmidt, the agent, to give notice to the company in New York of the information he had acquired from Mueller of the residence of the insured in Texas. When the insured pays the premium, and the agent receives it with the understanding on the part of the insured, that the policy is to be considered valid and subsisting, then it is the duty of the agent, having the power to receive premiums, and not the duty of the insured, "to communicate to the home office the circumstances under which these premiums had been paid, and the representations, terms and conditions under which they were paid; the insurers must be deemed to have constructive notice of the change of residence, and, upon the payment and receipt of the premiums by them, they become as much bound as if the premiums had been paid directly at the home office, and had been received there with a full knowledge of a change of residence of the insured. (1 May on Insurance, sec. 136; 11 Am. & Eng. Ency. of Law, pp. 338, 339; 2 Biddle on Insurance, p. 1074). In *Wing* v. *Harvey*, 5 DeG., M. & G. 265, it was held that "a local agent, empowered to receive premiums, possesses the right to waive a change of residence beyond the permitted lines; because the insured is assumed to have only paid the premium to him with the understanding that the policy would be kept up, and that the knowledge imparted to the agent should have been imparted to his principal." Many of the cases in New York, urged by the appellant upon our consideration as holding, where

a policy of insurance contains a provision that no officer, agent or representative of the company shall be held to have waived any of the terms or conditions of the policy, unless such waiver shall be in writing and endorsed on the policy, that a waiver will not be binding, unless made and endorsed as required by the policy, were referred to in *Manufacturers and Merchants' Ins. Co.* v. *Armstrong, supra;* and this court there refused to adopt the doctrine laid down in these cases.

The insured in the case at bar, when he communicated through his representative at Belleville to the company's agent there the fact of his residence in Texas, had a right to presume that such agent of the company would communicate the information so given to him to the company in New York. The presumption is, that the agent in such case does his duty as required by law. Under the circumstances the deceased had a right to rely upon this presumption. In *Insurance Co.* v. *Wolff,* 95 U. S. 326, Mr. Justice FIELD said: "It is true, that, where an agent is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances coming to his knowledge affecting its liability; and, if subsequently the premiums are received by the company without objection, any forfeiture incurred will be presumed to be waived." The latter case might seem at first blush to be opposed to the views here expressed, but a careful examination of its facts shows that such opposition does not really exist. There, the proof tended to show, that the agent was not apprised of the fact that the insured had gone into forbidden territory, and, as soon as the company had ascertained that fact, it directed a return of the premiums paid after the forfeiture. Here, the agent was fully informed at three different times of the residence in Texas. Here, also, it appears that there was not any return of the premiums, received by the company after the breach of the condition; nor was any forfeiture declared, until after the

death of the insured, and the presentation to the company of the proofs of his death.

The questions here considered are not new in this court. In *Phenix Ins. Co.* v. *Hart*, 149 Ill. 513, a fire insurance policy contained an agreement, that, "if the property should hereafter become mortgaged or incumbered * * * without consent endorsed hereon, * * * this policy shall be null and void." It also contained this further clause: "No agent, or employee of this company, or any other person, or persons, have power or authority to waive or alter any of the conditions or terms of this policy except only the general agent at Chicago, Ill., and any waiver or alteration by him must be in writing." It there appeared, that one Upham was the local agent of the company at Jacksonville, and that the insured informed such local agent of his execution of a mortgage upon a certain portion of the property; the local agent stated to him, that it was all right, and that there need be no consent of the company endorsed on the policy, allowing said mortgage; it was there held, that the insurance company, with knowledge of the mortgage, could not retain the premium, and treat the policy as in force, knowing that the insured was relying upon its validity, until a loss was incurred, and then insist upon the execution of the mortgage as a breach of the condition of the policy. It was also held in the case last referred to, that notice to the local agent of the breach of the condition was notice to the company, as the agent was clothed with apparent authority to transact the business of the company, and contract for it in respect to insurance; and that, independently of the question whether the local agent was authorized to waive the endorsement of consent on the policy or not, the company, being chargeable with notice of the fact, that the insured was relying upon the policy as a valid insurance, and having failed to exercise its right of forfeiture until a cause of action accrued upon the policy, must be held to have waived the neces-

sity of such endorsement of consent. In the case at bar, the insured knew that the receipts for the premiums were forwarded to New York to be there signed by the secretary of the company; and he had a right to presume, that, when the agent forwarded the premium and received back a receipt therefor, he had fully informed the company of the breach of the condition, and that it had consented to a waiver thereof. Although the condition is in writing, the waiver may be by parol, or may be inferred from the acts and declarations of the company. (*Manufacturers and Merchants' Ins. Co.* v. *Armstrong, supra*).

Whether the evidence in this case was sufficient to overcome the presumption, that the Illinois agent did his duty and gave notice to the home office or not, was a question of fact for the jury, and so far as we are concerned, is settled by the judgments of the lower courts. Vanderschmidt, the agent, who received and forwarded the premiums is dead, and has not testified in this case. The testimony of Doremus, the secretary, who signed the receipts in New York, has not been taken. There is in the record the evidence of an assistant secretary of the company, living in New York, who had charge of the books of the company, that the company never received any notice from its agent in Illinois of the residence of the deceased in Texas until after his death. The means of knowledge of this witness upon the subject were not the best. In an instruction, given for the defendant below, the court told the jury that, if they believed from the evidence, that the insured went into Texas during the forbidden time without having the written permission of the defendant endorsed upon the policy, and died there during said time, the plaintiff could not recover, unless the jury believed from the evidence that the condition was knowingly waived by the defendant. The jury have found that it was knowingly waived.

If it were true, that the company was not bound by the constructive notice, given to its agent in a foreign

State, and could claim, in case of the death of the insured party, that its local agent had not given it actual notice of the breach of the condition, and thereby avoid the payment of the amount due upon the policy, then the door would be opened for frauds to be perpetrated by collusion between the companies and such foreign agents. In such cases, the failure of the agent to give such notice to the company would be a fraud as well upon the insured, as upon the company. The principal "is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances, or misfeasances, and omissions of duty, of his agent, in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of any such misconduct." (Story on Agency, secs. 452, 140). Such conduct on the part of the agent in a foreign State, in such a matter of insurance as is here presented, would present a case for the application of the well recognized principle, that, where one of two persons must suffer loss by reason of the fraud of an unfaithful agent, it must be the company, and not the innocent assured. (*Insurance Co.* v. *Eshelman*, 30 Ohio St. 647). In *Haight* v. *Continental Ins. Co.* 92 N. Y. 51, where an agent knowingly issued a policy on a vacant house, and charged a premium usual for such risk, which the company accepted, and did not offer to return, it was held that the company must have intended to make a valid contract, or else to perpetrate a fraud, and the provisions of the policy, declaring that it shall be void, if the house become unoccupied without the consent of the company, and that no agent has power to waive or modify any of the printed conditions of the policy, were deemed to have been waived.

In *McGurk* v. *Metropolitan Life Ins. Co.* 56 Conn. 528, a life insurance policy contained a provision, that the insured should not be connected in any way with the ale, wine or liquor business unless so specified in the appli-

cation, or unless permission was given by permit signed by the president or secretary; and it was held, that the fact that the insured was at the time of the application in the liquor business did not prevent the policy taking effect; the policy also contained a provision, that agents were not authorized "to make, alter or discharge contracts or waive forfeitures," and it was held that, while an agent may not have power to waive a forfeiture, yet when knowledge of a ground of forfeiture came to an agent while in the discharge of his duties as agent, the knowledge of the agent was the knowledge of the company, and that the receipt of premiums after that time by the company became a waiver on its part of the forfeiture. It was also held in the latter case, that an agent, whose business it is to receive applications for insurance, to deliver policies, and collect premiums within a certain territory, is an agent, whose knowledge of a cause of forfeiture becomes the knowledge of the company.

In *Germania Ins. Co. of New York* v. *Rudwig*, 80 Ky. 223, which was an action upon a life insurance policy against the present appellant, it appeared that the plaintiff knew, that it was necessary to obtain the assent of the company to the residence of the insured in Mississippi, and that the agent had no power to modify or change the contract, as the policy stated that the agent had no such power, but it was held that, inasmuch as the agent received the premiums with the understanding between himself and the insured that the policy was to be binding on the company, and inasmuch as the agent was the agent of the company to receive premiums, it was the duty of such agent to have informed the company of what had transpired between the assured and himself. It was there held, that the power to receive premiums was expressly given the agent by the terms of the policy, and that, if he received them after the act of removal had worked a forfeiture, the company had no right to receive the money, and no right to insist upon a forfeiture while re-

taining the premiums; that the company must either disclaim the act of the agent by returning the money thus improperly paid, or comply with the terms of the policy. The case of *Wing* v. *Harvey, supra,* is referred to in the Kentucky case, and there approved of. (*Phœnix Mutual Life Ins. Co.* v. *Hainsly,* 75 Ind. 1; *Peoria Marine and Fire Ins. Co.* v. *Hall,* 12 Mich. 202; *Insurance Co.* v. *Eshelman, supra; Pelkington* v. *National Ins. Co.* 55 Mo. 172; *Hayward* v. *National Ins. Co.* 52 id. 181; *Miner* v. *Phœnix Ins. Co.* 27 Wis. 693).

It is claimed, that the first instruction given by the plaintiff was erroneous, because it states that it was the agent's duty to communicate the violation of the condition to its home office in New York "and the terms and conditions under which such * * * payments had been made." The objection to this instruction is its alleged assumption, that the payments were made upon terms and conditions. While the language may be deserving of criticism, yet the fact was undisputed, that the agent in Illinois was informed of the residence of the insured in Texas at the time of the payments, and assurance was given to the representative of the insured that the fact of such residence made no difference. It is a fair inference from this testimony, that the premiums were paid upon the condition, that residence in Texas would make no difference, so far as the validity and binding force of the policy were concerned. It was proper to submit to the jury the question, whether or not the payments were made because of the assurance given by the local agent, that the insured might rely upon the policy as still subsisting and unaffected by the breach.

After a careful consideration of all the questions involved, we are of the opinion that no error was committed by the courts below for any of the reasons here urged upon our consideration. The judgments of the Appellate Court and of the circuit court are therefore affirmed.

*Judgment affirmed.*