### NORTHWESTERN MASONIC AID ASSOCIATION v. BODURTHA, GUARDIAN, ET AL.

[No. 2,832. Filed May 12, 1899. Rehearing denied Oct. 25, 1899.]

LIFE INSURANCE.—*Warranties.—Breach.—Pleading.—Waiver.*—Defendant filed answer seeking to avoid the payment of an insurance policy because of certain false representations made by the assured as to the condition of his health, and the breach of a promise contained in the application to abstain from the excessive use of intoxicating liquors. Plaintiff replied that defendant issued the policy and accepted premiums thereon with full knowledge that the answers in question were false. *Held,* that the reply was demurrable, since it should have averred that defendant had notice of the violation of the agreement not to use intoxicating liquors to excess, and, with such notice, accepted payment of premiums. *pp. 122-125.*

SAME.—*Forfeiture.—Waiver by Agent.*—Where the agent of an insurance company, authorized to solicit applications and collect premiums, continued to collect premiums from assured with knowledge of the fact that he was using intoxicating liquors to excess, in violation of the policy, such action amounted to a waiver of the right to declare a forfeiture, although such knowledge was not communicated to the company. *pp. 125-127.*

SAME.—*Forfeiture.—Pleading.*—An answer seeking to avoid the payment of a policy of insurance because of false statements made by assured in his application in regard to his health, need not show that the company was imposed upon by the false statements, or that it believed the statements were true, where the policy which was made part of the answer stated that it was issued in consideration of the representations, agreements and warranties made in the application. *pp. 127, 128.*

SAME.—*Policy.—Warranty.—Use of Intoxicating Liquor to Excess.*—An application for insurance containing questions and answers, the medical examiner's report and an agreement reciting that "the preceding statements and answers, and the application and this agreement are made part of the policy" form part of the insurance contract, and an agreement therein that the insured would abstain from

the excessive use of intoxicating liquor, was a promissory warranty, and not the statement of an expectation. *p. 128.*

LIFE INSURANCE.—*Warranty.—Forfeitures.* — *Use of Intoxicating Liquor to Excess.*—The fact that an insurance company knew that assured was in the habit of drinking intoxicating liquor to excess prior to the issuance of the policy will not prevent the company from avoiding payment on account of a breach of a promissory warranty not to drink intoxicating liquor to excess. *p. 129.*

From the Miami Circuit Court.    *Reversed.*

*W. C. Bailey* and *C. A. Cole,* for appellant.

*W. E. Mowbray, R. J. Loveland* and *H. P. Loveland,* for appellees.

COMSTOCK, J.—This action is based upon a certificate of membership or policy of life insurance issued by the appellant to Charles F. Bodurtha for the benefit of his children, who are the respective wards of appellees.    The complaint was originally in three paragraphs, upon which issues were formed and evidence heard, but at the conclusion of the argument appellees were permitted to withdraw the first and third paragraphs.    The issues upon which the cause was submitted to the jury were formed on the second paragraph of complaint, the answer and reply.    The trial resulted in a verdict and judgment in favor of appellees for $2,279.

The answer admits the execution of the policy in suit, the death of the insured, the appointment of appellees as guardians respectively of the minor children of the deceased, the furnishing of proofs of death, and the demand for the payment of the policy,—but seeks to avoid the payment because of false statements, breaches of certain warranties and covenants of the insured contained in the application for insurance, made a part of the policy, as to the health of and use of intoxicating liquors by the insured.    Plaintiff replied, first, by general denial; second, affirmatively, that with full knowledge that the answers to the interrogatories in question were false, the association issued the policy to said Bodurtha, and accepted premiums thereon after it was known to

Northwestern, etc., Assn. *v.* Bodurtha, Gdn.

its agents that he was violating his promise as to the future use of intoxicating liquor, and retained the premiums so paid.

Appellant claims, first, that the court erred in overruling its demurrer to the sixth paragraph of the reply, which paragraph is as follows: "The plaintiffs for further reply to the said defendant's answer, and to each and every paragraph thereof, say that for the purposes of this reply they admit all and singular the allegations of said answer and in each paragraph thereof, but say that with full notice and knowledge of the untruthfulness of answers in the application complained of in said answers of the association, and of such other matter complained of in said several paragraphs of answer, the defendant association accepted and approved the application of the said Charles F. Bodurtha, issued and delivered to him the policy sued on, and collected the premiums due thereon at the date of said policy, and all subsequent premiums which accrued thereon before the death of said Bodurtha." It avers, also, that no part of said premium was ever returned or tendered to the said Bodurtha, or to the plaintiffs, or either of them, but is still retained by said association. This reply is addressed to all the paragraphs of the answer. It must therefore be good as to all to withstand a demurrer.

The defense pleaded in the several paragraphs of answer is representations and warranties of certain false statements in his application for insurance and membership in the association, to the effect that he had never had disease of the heart nor rheumatism; that he had never used intoxicating liquors to excess; that he would not thereafter use intoxicating liquors to excess,—when, in fact, he had been afflicted with rheumatism, and had disease of the heart, as he knew, at the time of said application; that he had been in the habit of using intoxicating liquors to excess, and that, after the issuing of the policy, he used intoxicating liquors to excess, and that his death was caused, in part, by its excessive use; that the appellant was induced to enter into the contract of in-

surance by reason of the false statements, representations and promises of the insured.

The clause of the application referred to is as follows: "I further agree and warrant that I will not use intoxicating liquors to excess, nor practice any pernicious habit that obviously tends to shorten life; that if, after becoming a member of said association, I shall fail to pay any bimonthly premium or assessment on or before the day on which the same shall fall due, or fail to comply with this agreement, then, and in either event, my membership shall cease, and said certificate of membership or policy become void, and all moneys I shall have paid shall be forfeited to said association for its sole use and benefit."

The reply is pleaded as a waiver of the false representations and the breach of the promise to abstain from the excessive use of intoxicating liquors. It is claimed that in issuing the policy and accepting the premium with knowledge that the representations were untrue, appellant waived any defense on account of their falsity. This paragraph does not, however, aver that the association, after the execution of the policy, waived the breach of the promise of the insured not to use intoxicating liquors to excess, by accepting premiums after notice of such breach. The knowledge alleged to be in the possession of the association at the time of the issuance of the policy and the payment of the premium, that the representations made by the insured were false, must be held to apply to knowledge existing at those dates; it could not apply to the future conduct of the insured. To be good, the paragraph should have averred that appellant had notice of the violation of the agreement not to use intoxicating liquors to excess, and with such notice accepted payment of premiums. Construing, under the universally accepted rule of pleading, this paragraph most strongly against the pleader, such averments are wanting. The acceptance of premiums after the violation by the insured of a condition of the policy rendering it void must be

with knowledge of such violation to estop the insurer to deny liability on account thereof. The insurer may be willing to assume a risk upon the life of one who has been intemperate in his habits, upon his promise to be temperate in the future. We have set out the clause in the application containing the agreement as to the future use of intoxicating liquors. By its terms, and the language of the policy, it is made a part of the contract. The policy reads: "In consideration of the representations, agreements, and warranties made in the application for this policy of insurance, which application is made a part of this contract," etc. The application contains two sets of questions to be answered by the applicant, one under "Form A", the other under "Form B". The agreement is under "Form B". Its first sentence is as follows: "I, the undersigned, hereby agree that each and all of the foregoing statements and answers in forms A and B, whether written by me or not, are material, and are warranted to be true, and that the foregoing application and this agreement are hereby made part of any certificate of membership or policy that may be issued pursuant thereto. *Presbyterian, etc., Fund* v. *Allen,* 106 Ind. 593; *Mutual Benefit Ins. Co..* v. *Miller,* 39 Ind. 475. The court erred in overruling the demurrer.

Appellant next claims that the court erred in overruling its demurrer to the seventh paragraph of reply. This paragraph contains substantially the averments of the sixth, and alleges in addition that, before Bodurtha became a member of the appellant association, the insured, at the solicitation of Humerickhouse and Mills, who were agents of appellants, applied for membership in said association; that the defendant is a foreign corporation; that Humerickhouse and Mills were its only agents authorized to do business in Miami county, Indiana (in which county the insured resided), and that from that date on until after the death of the insured they continued to be its agents to solicit applications and collect premiums for said association; that, while acting as said

agents, they knew that the insured was in the habit of using intoxicating liquors to excess after the date of the policy sued on, and was "at an institution for treatment for inebriety," and with knowledge of the fact that he was using intoxicating liquors to excess, and was being treated for inebriety, the association, by its agents, continued to collect for the association the premiums that accrued on the policy up to the time of his death, and have ever since retained the same.

The objection made to this paragraph is that it does not allege that the agents named communicated their knowledge to the company, or to any officer or any general agent, nor that they had authority to waive the forfeiture. It has been held in a number of cases that knowledge of the agent is knowledge of the company. In *Germania Life Ins. Co. v. Koehler*, 63 Ill. App. 188, it was held that an insurance company will be estopped from asserting a forfeiture of the policy by the knowledge of its agent of facts which would justify it in declaring the forfeiture, which right it had failed to exercise, and instead treated the policy as in full force. In the case just mentioned the insured in violation of the policy had changed his residence and moved into prohibited territory without the consent of the company. Upon the trial of the cause the court instructed the jury, that, if a duly authorized agent of the company received such premiums after notice of such change of residence, and the company retained the same, then it became as much bound as if the premium had been paid directly at the home office in New York, and had been received there with a full knowledge of the change of residence; and this, regardless of whether the agent informed the company of the violation of the policy or not. The appellate court said: "The plaintiff in error contends this is not the law. Our supreme court is committed to the doctrine that such facts would constitute a waiver of the right to declare a forfeiture. *Illinois Fire Ins. Co. v. Stanton*, 57 Ill. 354; *Williamsburg Ins. Co. v. Cary*, 83 Ill. 453; *Insurance Co. v. Sterger*, 124 Ill. 81, 16

N. E. 95; *Phenix Ins. Co.* v. *Hart*, 149 Ill. 513, 36 N. E. 990."

Upon appeal to the supreme court the judgments of the trial and appellate courts were, in a well reasoned opinion, approved. See *Germania Ins. Co.* v. *Koehler*, 168 Ill. 293. 48 N. E. 297.

In *Newman* v. *Covenant Mut. Ins. Co.*, 76 Ia. 56, 40 N. W. 87, the policy declared on, as well as the application therefor, provided that if the insured should use alcoholic liquors so as to injure his health, the policy should be void; another clause of the policy provided that the company might cancel the policy if it found that the insured did so use alcoholic liquors. But the agent who took and forwarded the application, and who later received the premium, knew all the time that the insured was an habitual drunkard. It was held that there was a waiver of these conditions of the contract, and that the habitual drunkenness of the assured would not defeat the recovery on the policy.

Manifestly, knowledge of the agent was held to be knowledge of the company. See *Insurance Co.* v. *Wolff*, 95 U. S. 326, in which it was held that there was, under the facts, no waiver of the forfeiture; but the court said: "It is true, that, where an agent is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances coming to his knowledge affecting its liability; and, if subsequently the premiums are received by the company without objection, any forfeiture incurred will be presumed to be waived." See *Miller* v. *Mutual Benefit Ins. Co.*, 31 Iowa, 216; *McEwen* v. *Montgomery Ins. Co.*, 5 Hill (N. Y.) 101; *Insurance Co.* v. *Combs*, 19 Ind. App. 331.

The questions presented by the remaining specifications of appellants assignment of errors may not arise upon a second trial, and we do not, therefore, consider them.

Appellees have assigned cross-errors, and we pass to their consideration. Appellees first question the sufficiency of the

first paragraph of answer to the complaint. This paragraph seeks to avoid the policy because of false statements made by the assured in his application for insurance in regard to his health. It is contended that the answer fails to show that the defendant company was imposed upon by the false statements, or that it believed that they were true, and was thereby induced to execute the policy. These representations were material. The policy itself states that it was issued "In consideration of the representations agreements and warranties made in the application." The policy and application are made parts of this answer. It is a sufficient allegation of inducement. Bacon on Benefit Societies, §§209, 210, 212; *Jeffries* v. *Life Ins. Co.*, 22 Wall. 47; *Cobb* v. *Covenant Mut. Assn.*, 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666. It is further claimed that this paragraph pleads a warranty and breach thereof, and that all that the warranty can be predicated upon is what is called an "agreement" attached to the application. Appellees claim that this agreement is not a part of the policy contract. The application for membership and answers to questions, the "agreement", the medical examiner's report, are all one paper, executed at the same time. The agreement is signed by the insured, the medical report following by the examiner, and the whole indorsed "Application to the Northwestern Masonic Aid Association." The agreement recites that the preceding statements and answers, and the application, and this agreement are made part of the policy. We are clearly of the opinion that the application, including the "agreement", forms a part of the insurance contract, and that the agreement of the insured that he would abstain from the excessive use of intoxicating liquor was a promissory warranty, and not, as counsel for appellees contend, the statement of an expectation. In this ruling the court did not err.

The second, third, fourth, and fifth specifications of cross-errors relate to the second, third, fourth, and fifth paragraphs

of answer, and present substantially the same questions raised by the first cross-error, and what we have said with reference to the first cross-error applies to them. In these rulings there was no error.

Appellees next discuss the action of the court in sustaining the demurrer to the fifth paragraph of reply. The paragraph of answer to which this paragraph of reply is addressed pleads a promissory warranty, in that said Bodurtha in his application for insurance agreed and warranted that he would not use intoxicating liquors to excess, and it avers as a breach of said warranty that, after the issuing of the policy, he did use intoxicating liquors to excess until he became a physical wreck, and that such dissipation contributed to his death. The reply to this answer avers that before the date of said application, and before the issuing of the policy, the said Bodurtha had used intoxicants to excess to such an extent as to render him diseased from such dissipation, which disease affected him at the time of said application, of which fact the said association had knowledge at the time of the application, and thereafter, before the issuing and delivery of the policy; that the deceased's condition continued until his death, and his return to such dissipation was merely a recurrence of the disease, over which he had no control. Appellees' counsel quote from eminent writers on medical jurisprudence, showing that drunkenness is a disease, that it is liable to occur periodically, and argue from these facts that the company, knowing that Bodurtha was diseased, and the cause of it, having issued the policy, cannot now honestly refuse payment. We think it would be a dangerous precedent to hold that the deplorable conditions, physical and mental, which are likely to follow the immoderate use of intoxicants, should preclude business transactions with one who in the past may have been the victim of the habit but, who promises to be temperate in the future, and to release such party from the obligations of a valid contract because of his failure to keep this promise.

Springfield, etc., Co. v. Michener.

Specifications nineteen, twenty, and twenty-eight, of the assignment of cross-errors relate to the refusing to give, and the giving of certain instructions. They are not the basis of an independent specification of error, and do not therefore present any question for review.

We are not unmindful of the rule that forfeitures are not favored in law, and that the insurance company is asking the enforcement of a rule which is, ordinarily, a harsh one, while it retains the premiums for which the insurance was carried. But the courts do declare forfeitures when the insurer is clearly entitled thereto. In the case before us the terms of the contract are plain. It was deliberately made. The parties were competent to enter into it. It contravenes no rule of law, and we see no reason why it should not be enforced. Wilcox v. Continental Ins. Co., 85 Wis. 193, 55 N. W. 188; Wierengo v. American Ins. Co., 98 Mich. 621, 57 N. W. 833; Smith v. Columbia Ins. Co., 17 Pa. St. 253; Pennsylvania Ins. Co. v. Gottsman, 48 Pa. St. 151, 157; Bank v. Amazon Ins. Co., 125 Mass. 431; Crikelair v. Citizens Ins. Co., 168 Ill. 309, 48 N. E. 167; Northwestern Ins. Co. v. Hazelett, 105 Ind. 212, 55 Am. Rep. 192, and authorities there cited.

Reversed, with instructions to the trial court to sustain appellant's demurrer to the sixth paragraph of reply, and for proceedings not inconsistent with this opinion.

Wiley, J., took no part.