# Security Mutual Life Insurance Co. v. Riley.

*Action on an Insurance Policy.*

(Decided Nov. 26, 1908.   47 South. 735.)

1. *Insurance; Forfeiture; Non Payment of Premium.*—Where a policy provides that it shall be invalid unless the premiums are paid when due, the non payment of a premium when due will work a forfeiture of the policy.

2. *Insurance; Waiver of Forfeiture.*—The receipt and retention of overdue premiums by the company is a waiver of the forfeiture, notwithstanding the policy provides that it shall become invalid unless premiums are paid when due.

3. *Same; Power of Officers to Waive.*—A provision in a policy of insurance that a forfeiture cannot be waived except by a written agreement signed by certain officials refers to an express agreement, and does not prevent an implied or parol waiver of a forfeiture.

4. *Same.*—The acts of the officers or agents of an insurance company, including notice to such officer or agent, are imputable to the company, and hence, the general manager of the company's southern department, who had superintendence of all transaction in a number of states, and received all premiums collected in that territory, could waive a forfeiture for a non-payment of premiums when due, by thereafter receiving and retaining it with the knowledge that it was overdue when paid, although his contract with the company prohibited the exercise of such authority by him, a fact not known to the persons dealing with such agent.

[Security Mutual Life Insurance Co. v. Riley.]

5. *Same; Notice to Officers.*—Defendant's general agent by receiving on May 8, from the company's collection agent a check dated May 7, for the amount of the premium, waived a forfeiture for non-payment of the premium when due, when he failed to inform himself whether the premium was overdue when paid, in this instance it being payable on May 1st.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Action by Mollie A. W. Riley against the Security Mutual Life Insurance Company. From a judgment for plaintiff, defendant appealed. Affirmed.

FRED S. BALL, for appellant. Under a contract of insurance such as is involved in this case, and containing its provisions with reference to forfeiture for non-payment of premiums at maturity, the failure to pay on or before maturity works a forfeiture of the policy. Cooley's Briefs on Insurance, page 2669, et seq. A Waiver to be effective must have occurred with full knowledge of all the material facts. 19 Cyc. 778, and cases cited. The bank had no authority to waive the forfeiture.—*Conway v. Phoenix M. L. Ins. Co.*, 140 N. Y. 79; *Marvin v. U. L. Ins. Co.*, 85 N. Y. 278. The burden is on the appellee to prove the authority of an agent to extend the time so as to avoid a default.—*Mut. Life Ins. Co. v. Wilson*, 34 S. W. 708. No ratification was shown.—*Geo. L. Ins. Co. v. Allen*, 128 Ala. 451; *Ill. M. B. S. v. Baldwin*, 86 Ill. 479.

STEINER, CRUM & WEIL, for appellee. Forfeiture of insurance contracts are not favored.—*U. S. Ins. Co. v. Lesser*, 126 Ala. 568; *Trav. Ins. Co. v. Brown*, 138 Ala. 526; *Washburn v. U. C. Ins. Co.*, 143 Ala. 485; *Mobile L. Ins. Co. v. Pruett*, 74 Ala. 487; *Cassimus v. Scottish Union*, 135 Ala. 256; *Ins. Co. v. Letcher*, 143 Ala. 400. The receipt and retention of the over due premium was a waiver of any forfeiture.—*U. S. Ins. Co. v. Lesser*,

*supra;* 25 Cyc. 869-70; *Syndacate v. Cagings,* 104 Ala. 176; May on Ins. Secs. 287 and 154, and authorities supra.

DENSON, J.—On the 3d day of July, 1896, Bankers' Guarantee & Life Association of Atlanta, Ga., hereinafter referred to as "Bankers' Company," issued to William T. Riley, of Montgomery, Ala., a policy of insurance on his life in the sum of $2,000; Mollie A. W. Riley, wife of the insured, being named in the policy as the beneficiary. After the insurance of the policy Security Mutual Life Insurance Company of Binghamton, N. Y., hereinafter called "Security Company," assumed Riley's policy, the precise date of such assumption being December 6, 1899, and agreed to pay every valid claim that might arise thereunder after said date, subject, however, to all the terms and conditions of the contract of insurance with the Bankers' company. William T. Riley died on the 19th day of May, 1906, and Security Company refused on proof of death made to pay the policy. Hence this action to recover the amount alleged to be due thereby.

There is no conflict in the evidence, and at its conclusion, in the course of the trial in the court below, that court at the written request of the plaintiff gave the general affirmative charge, with proper hypothesis, in favor of the plaintiff, and refused a similar charge requested by the defendant. The question presented by this appeal for decision is whether or not the clause in the policy which provides for a forfeiture on the failure of the insured to pay a premium by a given day was waived by the acceptance of payment from him two or three days after the due day, and the retention of the same by the company. The policy provides for the payment of $2,000 within 90 days of the receipt of satisfactory evidence to the insurer of the death of the insur-

[Security Mutual Life Insurance Co. v. Riley.]

ed during the continuance of the policy in full force and effect, "provided that, if the payments required to be made by the insured under this policy shall not be made when due, then this policy shall become null and void, and the association shall not be liable to the sum assured, or any part thereof, and in such event all payments theretofore made thereon shall be forfeited to and become the property of the association." It is further provided in the policy that "all payments on this policy are due at the home office of the association in Atlanta, Georgia, but at the pleasure of the association, suitable persons may be authorized to receive the same at other places, on the production of the association's receipt therefor, signed by the secretary and countersigned by the collector to whom the payment is made. No payment shall be binding on the association unless made in accordance with the above." It is further provided that "No agent is authorized to make, alter, or discharge contracts, or to waive forfeitures. No such act shall be valid unless in writing and signed by the Secretary and General Manager of the association." To the insured there was issued a certificate of the assumption by the Security Company of said policy, embracing this clause: "Notice is hereby given and accepted that the annual meeting of the Security Mutual Life Insurance Company is held at the home office of said company in the city of Binghampton, N. Y., on the first Tuesday in February of each year at 2 o'clock in the afternoon." The policy was issued countersigned, and delivered by Craig Cofield, the then general manager of the Bankers' Company, residing in Atlanta, and having full charge of that company's business at that time. Upon its taking over the business of the Bankers' Company and assumption of said policy, the defendant retained and occupied the offices and place of business previously occu-

pied by the Bankers' Company in Atlanta, Ga., and inaugurated an office there, known as its "Southern Department," comprising and having jurisdiction over the states of Alabama, Georgia, the Corolinas, and Tennessee. Cofield was retained as general manager of this department. The caption of all stationery used by the defendant from its Atlanta office designated as the officers of the defendant company "Craig Cofield, Manager, and Henry A. Coleman, Assistant Cashier."

The Bankers' Company, from the beginning, adopted the method of collecting premiums from policy holders in the city of Montgomery, Ala., of forwarding to the Merchants' & Planters'-Farley National Bank, of said city, and to its successors, duly signed quarterly premium receipts, to be delivered to the policy holders severally by the collecting bank, when and as the requisite premiums were paid in, the bank remitting in exchange or by its check. · This course was pursued by the defendant from and after the time it assumed the liabilities of the Bankers' Company; and all its receipts were so sent from its Atlanta Office, the office at which, as policy holders were notified, all premiums were due and payable. All the premiums during the life of the policy sued on, covering a period of some 10 years, were regularly paid by the insured. Just prior to the maturity of the last quarterly premium—the one now involved—the Southern department of the defendant company, as was its custom, transmitted to its collecting bank in Montgomery premium receipts for collections as follows: To J. B. Nicrosi, $24.13; to W. T. Riley, $8.13; and to G. F. Emerson, $8.55. This batch of receipts was accompanied by a printed form of letter, addressed to the bank as "Collecting Agency at Montgomery, Alabama," specifying the inclosures, and signed, "F. W. Coleman, Cashier, Southern Department." At the bot-

tom of the letter, under the signature, was the following, in printed form: "Collecting Banks: Add three days of grace to date of receipt for final payment. Return all unpaid receipts promptly on the 5th of the month in which they are due." Riley's receipt was substantially in the following form: $8.93. Security Mutual Life Insurance Company, Binghampton, N. Y. Third Floor English-American Building. Atlanta, Ga., May 1st, 1906. Received from W. T. Riley the sum of eight and 93/100 dollars, being the regular quarterly payment on policy No. 2057. [Signed] F. W. Coleman, Cashier Southern Department." It was recited in the margin of the receipt that the receipt was not valid unless countersigned by the collecting bank. It was so properly countersigned.

On the reverse of this receipt, in small type, under the heading "Notice to the Policy Holders," were printed various stipulations, of which only those material here need be repeated, viz.:

"This premium is due and payable at the office Southern department, 3rd Floor English-American Building, Atlanta, Georgia."

"Collecting agents, to whom the proper renewal receipts, signed by the cashier Southern department, have been forwarded, are authorized to receive premiums, not overdue, on countersigning and delivering said renewal receipts, as evidence of payment, but not otherwise."

"The agreement is mutual (see policy) that unless the premium is paid on or before the day it becomes due it is forfeited and void."

"No agent, collector, or other person, except the president, vice president, comptroller, or register has authority to receive payment of a premium after it becomes due, or to extend the time for the payment of a premium, or to grant permits, or to make, alter, or discharge policy contracts, or to waive any condition thereof."

All receipts theretofore given to the insured were in practically the same form as the one here involved. It was also in evidence that the Atlanta office mailed to the insured on April 28, 1906, a card on which was printed in red ink the admonition: "Pay your premium in the Security Mutual Life Insurance Co., if not already paid, due May 1st, 1906."

It was shown that it was, and had been, the custom of the collecting bank ever since it begin to make these collections to make remittances of collections on the day of collection from the policy holders, unless collection was made after business hours, when remittance would be made the following day. It was also shown that the bank did make remittance of collection for the Nicrosi receipt on the 1st day of May, 1906, and for the Emerson receipt on the 3d day of May, 1906, retaining the receipt for Riley until the 7th day of May, 1906, when Riley's son-in-law, Osborn, paid the premium and received the receipt from the bank. The bank remitted for this receipt on May 7, 1906, by New York draft, which remittance was accompanied by a letter addressed to "Craig Cofield, Manager, Atlanta, Ga.," showing when collection was made. The draft thus remitted for the premium paid by Riley was made payable to "Craig Cofield, Manager," as had been the custom. It was received at the defendant's office in Atlanta, May 8, 1906, and on that day was indorsed, "Pay to the order of Maddox-Rucker Banking Company," over the signature, "Security Mutual Life Insurance Company, Craig Cofield, Manager, So. Dept., by F. W. Coleman, Cashier So. Dept.," and was deposited by its cashier, to the credit of the defendant company with the Maddox-Rucker Banking Company, in Atlanta, Ga., where the defendant had a general account—all collections for the Southern department being deposited there. This draft went

through in regular course, and was paid by the New York bank upon which it was drawn on May 11, 1906. It was customary, in the transaction of business between the home office of the defendant and its Southern department, for the latter to make report and remittance of collections monthly about the 1st of each month; and a report and remittance of the premium in the instant case was thus made about the 1st of June, 1906. As has been stated, the premium was paid by Osborne. In the absence of the insured from the city, Osborne received the notice from the bank that it held the premium receipt for collection. He called at the bank, paid the premium for Riley out of Riley's money, and received from the bank the proper receipt. Osborne paid no attention to the printed matter on the back of the receipt. It did not come into his possession until after he had made the payment. The insured became ill, and died on the 19th day of May, 1906. After his death, to wit, on May 22, 1906, Osborne wrote to Bankers' Guarantee Fund Life Association, Atlanta, Ga., a letter notifying it of the death of the insured, and asking for necessary blanks for proof of death, which letter was received and forwarded to the defendant company at its home office. Again, on May 25, 1906, Osborne wrote to Craig Cofield, manager of Security Mutual Life Insuranse Company, similarly, notifying him of the death of the insured and asking for blanks for proof of death. The last-mentioned letter was on May 28, 1906, forwarded to the home office at Binghamton, N. Y. Immediately upon its receipt, the home office inquired of the Atlanta office touching the payment of the premium due May 4, 1906, which up to that time had not been reported to or paid into the home office, and of the payment of which the home office had had no actual notice or knowledge. Thereupon the Atlanta office wrote to the bank in Montgomery for the date of the payment of the pre-

mium, and by return mail, on June 2, 1906, received reply that the premium had been paid to it on May 7, 1906. The Atlanta office at once forwarded this information to the home office, and thereupon the home office immediately mailed to the Atlanta office a letter repudiating the collection of the premium on the ground that it was not paid until after maturity, and instructing the Atlanta office to pay back to the collecting bank the amount collected by it, with interest thereon, and to notify that bank that it had collected the premium after maturity without authority, and that the collection would not be recognized by the company. On this the Atlanta office sent a letter inclosing $8.93, with interest, to a local agent, one Tillman, who called upon the bank on June 13, 1906, and delivered to the assistant cashier thereof the letter containing the money. The cashier opened the envelope, read the letter, and refused to accept the money, tendering it again to Tillman, who declined to take it and left the bank, leaving the money upon the bank counter. The bank's cashier took the money, inclosed it in an envelope, and mailed it by registered letter to the Atlanta office. That office declined to receive the letter, and it was returned to the bank in Montgomery. Upon its return, the bank notified the Atlanta office that it held the money subject to the company's order, and that it had not acted without authority, nor exceeded its authority, in making the collection. Proofs of death were sent to the defendant company, to which, although not made out on the forms of the company, no objection was made. The proofs were retained about a week, and then returned, with the statement that they had not been called for, and that payment of the policy would be refused.

The defendant offered in evidence two contracts made between it and Cofield relating to the employment of the latter. These contracts were entered into in the

36 R

years 1899 and 1903, respectively. Both of the con-
tracts were in force at the time of the transaction, the
subject of this litigation. By the terms of the first
Cofield was appointed general manager, to be known as
"Manager of the Southern Department" of the defend-
ant company, for the purpose of procuring, through
agents and in person applications for insurance, and
collecting the first premium within the territory named,
etc. By the second of the contracts he was appointed
also collector for the defendant for the states of Geor-
gia, the Carolinas, and Alabama, and was authorized
to collect all premiums becoming due to the defendant
within that territory. The primary purpose of these
contracts was to fix the basis for Cofield's compensation.
In the contract of 1899 there is this clause: "The
authority of said general agent shall extend no further
than is herein stated. He shall not make, alter, nor dis-
charge any contract, or waive forfeiture, or contract
debts in the name of said company." The contract of
1903 contains this clause: "As such collector, he will
have no right to collect or receive any premium after
the date on which it falls due; neither will he have any
right or power to extend the time for payment in full,
or in part, of any premium, unless expressly so authori-
zed by an instrument in writing and signed by the presi-
dent of the company." The insured had no notice of
the method of transacting business as between the de-
fendant's home office and its Southern department, nor
did it appear that he was informed that the defendant
had any other office than that in Atlanta, except as
might be inferred from the statement, at the foot of
the written assumption by it of the risk, to the effect
that the annual meetings of the defendant company
were held at its home office in the city of Binghampton,
N. Y. On the contrary, all of the insured's transactions

were had with the Atlanta office. He had been notified that all premiums were due and payable there. It was shown that the insured had had no notice of the limitation on the authority of Cofield such as were provided in the contracts between him and the defendant company. It was shown, however, independently of the contracts, that from the beginning Cofield was connected with the Bankers' Company, was one of its incorporators, a member of its board of directors, and its general manager, issuing, countersigning, and delivering policies for it, and that from the time defendant assumed the business liabilities of the Bankers' Company he was generally known, recognized, and advertised as the general manager of the Southern department of the defendant company, having full supervision of that department.

The law is well established that, under policies conditioned as is the present one, nonpayment of premiums at maturity will work a forfeiture. We understand that this principle is not controverted in this cause; but, as has been already stated, in another form, the plaintiff insists that her case is saved from the effect of the conceded principle by waiver of the condition as to forfeiture, on the part of the defendant, in the acceptance and retention of the overdue premium. Another well-settled principle is that the receipt and retention of an overdue premium by an insurance company will constitute a waiver of the forfeiture.—*United States Insurance Company v. Lesser,* 126 Ala. 568, 28 South. 646.

The first insistence of the appellant touching the question of waiver is that inasmuch as it is provided that forfeiture cannot be waived save in writing by certain officers of the company, together with the fact that no such waiver was made, the doctrine of waiver has here no foundation upon which to rest. A provision in

an insurance policy, to the effect that a forfeiture cannot be waived except by agreement in writing, signed by certain officials, is for the benefit of the company, has reference only to express agreements, and does not preclude an implied waiver or one by parol.—*Alabama, etc., Co. v. Long,* 123 Ala. 667, 675, 26 South. 655; *United States Insurance Co. v. Lesser, supra; Pope v. Glens Falls Co.,* 130 Ala. 356, 30 South. 496; *German Ins. Co. v. Gray,* 43 Kan. 497, 23 Pac. 637, 8 L. R. A. 70, 19 Am. St. Rep. 150; *Home Ins. Co. v. Gibson,* 72 Miss. 58, 17 South. 13; *Metropolitan, etc., Co. v. Sullivan,* 112 Ill. App. 500; *Home, etc., Co. v. Nichols* (Tex. Civ. App.) 72 S. W. 440. The reason for this principle is thus tersely stated by the Supreme Court of Michigan: "There can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it."—*Winchester Ins. Co. v. Earle,* 33 Mich. 143. This being true, the question arises: Can waiver be predicated of or implied from the conduct of the defendant's agent or agents as shown by the evidence in this record? In considering the question, it may as well be conceded that the Montgomery bank violated its instructions in accepting the overdue premium. Nevertheless such concession does not necessarily conclude the theory of waiver. It has been well said that "the business of an insurance company is of necessity carried on by its officers and agents. The company and its officers are one and the same within the scope of their authority. The acts of officers and agents are imputable to the company. So as a general rule are notices." Passing consideration as to whether the collecting bank in Montgomery could by its conduct in accepting the premium overdue bind the defendant company, we remark that Cofield

was more than a mere local agent of the defendant. He was at the head of defendant's Southern department, as general manager, far removed from the home office. All transactions had with the company by persons in any of the states included in the Southern department territory were under his supervision. All premiums collected in that territory passed through his office in Atlanta, and were reported from that office once a month. All of the premiums paid on the present policy were paid through the Atlanta office. In short, the evidence shows that Cofield was the defendant's alter ego. Therefore we do not hesitate to hold that he might, with knowledge of the fact that a premium had been paid after the date of its maturity, waive the forfeiture by accepting and retaining the same. Such knowledge on his part would be the same as knowledge carried home to the company.—*United States Life Ins. Co. v. Lesser*, 126 Ala. 568, 28 South. 646; *Travelers' Ins. Co. v. Brown*, 138 Ala. 526, 35 South. 463. This principle is unaffected by private agreements between principal and agent not revealed to persons dealing with the agent.—*Syndicate Ins. Co. v. Catchings*, 104 Ala. 176, 16 South. 46.

Did Cofield have knowledge, or were the circumstances such as made knowledge chargeable upon him, that the premium was paid after the due day had expired? He testified that on the 8th day of May he received from the Montgomery bank a check for $8.83, which was the amount of the premium on the policy less ten cents exchange, and that the check was drawn on Chase National Bank, New York, and dated May 7, 1906. On these facts he was bound to inform himself as to the time the premium had been paid into the bank in Montgomery; and by receiving it and retaining it, without making the inquiry, the right to insist on the delay in payment, as a ground upon which to rest a forfeiture of the policy,

was waived.—*Hodson v. Guardian Life Ins. Co.,* 97 Mass. 144, 93 Am. Dec. 73; *Northwestern, etc., Co. v. Bodurtha,* 23 Ind. App. 121, 53 N. E. 787, 77 Am. St. Rep. 414; *Germania, etc., Co. v. Koehler,* 168 Ill. 293, 48 N. E. 297, 61 Am. St. Rep. 108; *Mutual, etc., Co. v. Robertson,* 59 Ill. 123, 14 Am. Rep. 8; *Washburn v. Union Central Ins. Co.,* 143 Ala. 485, 38 South. 1011. Furthermore, after receiving the premium under the circumstances above detailed, it was never returned to any one save the collecting bank in Montgomery. That bank cannot in any sense be considered the agent of the insured, the beneficiary in the policy, or of Osborne, who paid the premium.—*German Ins. Co. v. Shader,* 68 Neb. 1, 93 N. W. 972, 60 L. R .A. 918. The court is of the opinion that the affirmative charge was properly given for the plaintiff and refused to the defnedant.

There is no merit in the objections to the admissibility of the policy as evidence.

It follows that the judgment of the city court must be affirmed.

Affirmed.

TYSON, C..J., and SIMPSON and McCLELLAN, JJ., concur.