112   545
a212s 326

# Illinois Trust & Savings Bank, use, etc., v. City of Pontiac.

## Gen. No. 4,265.

1.  QUESTIONS OF LAW—*when, do not arise upon appeal.* Where a case has been tried by the court without a jury and no objections or exceptions preserved to the testimony, no propositions of law presented, and no exception of any kind preserved except that interposed to the judgment, the only question presented upon review is whether, under all the evidence, treating it all as competent or as heard without objection, the judgment is sustained by the facts.

2.  EXECUTION—*when error in awarding, against municipality, is waived.* An error in awarding an execution against a municipality is waived by failure to assign such action as error.

3.  TITLE OF CASE—*when irregularity in, is waived.* Where the clerk has kept the title of a case so that the judgment therein appears to be in favor of a person not a party to the record, such defect is waived by failure to assign the same as error.

4.  FORFEITURE—*when particular provision in an ordinance does not provide for.* A provision in an ordinance creating a water works company to the effect that if such company shall fail to furnish to the inhabitants of the enacting municipality water fit for drinking and domestic purposes, such municipality may give to such company notice of such failure, and if such company does not, within the period prescribed by such ordinance, maintain such filtering processes as will make the water suitable for such purposes, that then, from and after the expiration of such time and until such time as such company does maintain such filtering processes and supply such water, such municipality shall be relieved from paying hydrant rentals provided for in such ordinance, is valid, as a provision for stipulated or liquidated damages, does not provide for a forfeiture, and exempts such municipality from liability to pay for water used by it from such hydrants for the period ensuing after the expiration of the time fixed in such notice, during which such company so fails to furnish such water.

5.  WAIVER—*when acceptance of water works is not a, of provisions of franchise ordinance.* The acceptance by a municipality of water works which do not contain certain filtering processes required by the franchise ordinance, if essential to keep the water to a certain purity, is not a waiver of such ordinance provision where the portion of such ordinance providing for such acceptance did not require a preliminary test of the water and it does not appear that at the time of such acceptance the municipal authorities knew of the impurities of the water.

6.  NOTICE—*when service of notice upon water works company is sufficient.* The service upon the superintendent of a water works com-

pany of a notice provided for in the ordinance granting the franchise under which such company works, is good service upon such company.

7.   NOTICE—*when alleged defective service of, is frivolous.*   A claim to the effect that the notice provided for by the franchise ordinance, has not been duly served, is frivolous where it appears that such notice was received and acted upon.

8.   INNOCENT PURCHASERS—*when bondholders of water works company are not.*   Persons purchasing bonds of a water works company are bound at their peril to ascertain the terms of the ordinance creating such company.

Action of assumpsit against municipality.   Error to the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge. presiding. Heard in this court at the October term, 1903.   Affirmed.   Opinion filed March 14, 1904.

**Statement by the Court.**  On March 31, 1902, the Pontiac Water, Light and Power Company began this suit against the city of Pontiac to recover certain hydrant rentals alleged to be due from the city to it under a contract between them, with interest thereon.   By subsequent amendments the plaintiff was changed to the Illinois Trust and Savings Bank, trustee, for the use of the holders of ninety-eight bonds issued by the Pontiac Water, Light and Power Company.   Afterwards, the parties entered into a written stipulation as to the facts upon which the cause of action and the defense were based and agreed that all pleadings of plaintiff and defendant under which this evidence would be admissible, if competent, should be considered in.   A jury was waived, and the cause was tried upon said stipulation, and there was a finding and judgment in favor of plaintiff for $1,392.11.   Plaintiff claimed $14,919.48 and therefore appealed from the judgment in its favor, and has assigned errors questioning the finding and judgment of the court; and defendant has assigned as cross-errors the rendering of any judgment against it, and the inclusion of interest in the judgment.

The stipulated facts material to a decision are as follows : In 1891 the city of Pontiac adopted an ordinance, the first section of which granted John J. Hainsworth and associates, their successors and assigns, the privilege of establish-

ing and operating water works within the city for twenty
years from their acceptance by the city, for supplying said
city and the inhabitants thereof with good and wholesome
water, the water to be at all times settled, cleansed and puri-
fied, and filtered if necessary, and suitable for fire, drinking,
domestic and other purposes; and gave the water company
the privilege of using the streets, alleys, sidewalks, bridges
and public grounds of the city within its present and future
corporate limits, for placing, taking up and repairing mains,
hydrants, etc., for the service of water. Section two con-
tained the following : " The source and supply shall be
from the most available and suitable source, springs and
wells preferred, if a sufficient quantity can be obtained, not
subject to any sewerage pollutions from the city drains, and
shall furnish a supply of water of the quality provided in
section one herein, and suitable for the requirements of the
city and its inhabitants; the city reserving the right at all
times to require an examination thereof at the city's ex-
pense, and to require the water to sustain a test satis-
factory to this ordinance; and the water company shall at
all times be required to maintain such filtering processes as
shall render the water suitable for the purposes heretofore
mentioned, and in case said company neglects or refuses to
maintain such filtering processes, after sixty days' notice by
said city, then said company shall forfeit the hydrant rental
prescribed in this ordinance until such filtering processes
are provided." Section three directed the size and manner
of laying the mains and the style of fire hydrants, and re-
quired the water company to give a written notice of the time
of holding a public test of the power and capacity of the
water works, and provided how many streams should be
thrown at that test, through what sized nozzles, and to what
height; and that after the performance of that test, rental
of the hydrants should begin and the city should give the
water company a certificate in duplicate to that effect. By
section eight the city agreed to rent sixty fire hydrants for the
term of twenty years from the time said water works should
be accepted by the city, and to pay a rent of $2,500 per year

therefor, and for any additional hydrants thereafter located $45 each per year, said sums to be paid by the city to the water company. The city was given the privilege of having additional hydrants placed, on certain conditions. Said section eight also contained the following language: "In case the water company shall issue bonds secured by mortgage or trust deed upon said water works and appurtenances, then the money due or to become due for any hydrant rental as aforesaid, or so much as may be necessary, is hereby appropriated to the payment of interest on such bonds, and the city treasurer shall deposit the same at the bank in Chicago to be designated by the trustee of such bonds to be applied for such payment. The city agrees to pay legal interest on all sums of money due from it, if not paid or deposited at maturity." Section nine provided that the fire hydrants rented by the city should be used only for extinguishing fires, for reasonable practice for the fire company, and for flushing gutters and sewers, under certain restrictions. Section thirteen provided the rates to be charged to private consumers for the use of water. Section fourteen gave the water company, its associates, successors and assigns, the exclusive right to operate water works and supply the city and its inhabitants with water for fire, domestic, manufacturing and other purposes during the twenty years from the acceptance of the water works by the city, unless purchased by the city, provision for which was made in section seven. Section eighteen required that the grantee should within thirty days after the passage of the ordinance indicate its written acceptance by taking certain steps, "and upon such acceptance this ordinance shall constitute the contract between the parties hereto." Section nineteen provided that after such acceptance copies of the ordinance should be executed by the mayor and city clerk and by the water company, and exchanged. That ordinance was accepted and has ever since remained in force, and water works were built thereunder.

In June, 1892, the Pontiac Water, Light and Power Company was incorporated, and the rights of Hainsworth and

associates were assigned to said company, which will here-inafter be called the water company. On June 16, 1893, the city council adopted a resolution that the water works built under said ordinance had been completed and tested as specified by said contract and franchise, and were accepted, the rental to begin May 15, 1893. A certificate of said acceptance was delivered to the water company. The company proceeded to furnish water continuously to the city and its citizens, and two additional fire hydrants were put in prior to the date from which plaintiff claims to recover hydrant rentals in this suit. On July 1, 1892, the water company issued bonds, and executed a trust deed to The Illinois Trust and Savings Bank, as trustee, to secure said bonds, and therein pledged all its corporate property as security for the principal and interest thereof, and therein specially assigned and transferred to said trustee all claims and demands against the city of Pontiac that might arise during the existence of any part of such mortgage debt for rental of the fire hydrants, as further security for the payment of such interest coupons. Ninety-eight of these bonds for the principal sum of five hundred dollars each, were afterwards sold to various persons and are all outstanding. They bore interest at six per cent per annum, payable semi-annually on January 1 and July 1, of each year. There-after, the city paid a part of its hydrant rentals to said trustee. The trustee disbursed the same in payment of the interest coupons.

The water company never maintained such filtering proc-esses as to render the water furnished by it suitable for drinking and domestic purposes, and ever since June 17, 1893, which was the next day after the acceptance of the water works, the water has not been suitable for drinking and domestic purposes, but has been impure, unhealthy and impregnated with organic matters. For some days prior to, and for some days after June 16, 1893, the day the water works were accepted, the water was obtained from a well, and after that from the Vermillion river, which flows through the city of Pontiac. It was not shown that the

city at that time knew of the impurity of the water, but it is stipulated that in June, 1897, the city of Pontiac caused an examination of said water to be made and thereupon found the same to be unfit for drinking and domestic purposes, and that the same did not comply with the requirements of the ordinance. On July 3, 1897, a notice was served on the superintendent of the water company to the effect that in pursuance of an order of the city council made at a regular meeting held July 2, 1897, he was thereby notified that unless within sixty days from that date the water furnished by the water company to the consumers was so filtered as to comply with and be fit for the uses described in the franchise to said water company, the hydrant rentals from the city of Pontiac would be forfeited. When the plant of the water company was constructed no filtering device was placed therein or used, nor prior to July, 1897. In pursuance of the notice just specified the water company bought, erected, and used a filtering apparatus, but it did not purify the water, and it was abandoned on February 1, 1898. Various proceedings of the city council were in evidence wherein it was reported to it by its health officer that analysis of the water showed it was not of the quality required by the ordinance, and not fit for domestic use, and motions to pay the hydrant rental were defeated. The water company, or its successor under the foreclosure hereinafter mentioned, continues to operate the plant, and receives therefrom an annual income of about $7,000, which is increasing, though the water is not used to any extent for drinking, culinary or domestic purposes. The city paid no money for hydrant rentals or use of water since July 1, 1897, and if the city is liable for those rentals, such rentals and the interest thereon to a period shortly prior to the date of the stipulation amounted to $14,919.48, which sum plaintiff claims.

On August 5, 1898, the trustee began proceedings to foreclose the trust deed for the benefit of the holders of said bonds and on July 15, 1901, the corporate property was sold in said proceeding and said sale was ap-

proved, and there was found to be a deficiency of $30,073, for which there was a deficiency decree against the water company. In said foreclosure proceedings a receiver was appointed and given full control of the plant and property and rights of action of the water company, and said receiver continued to act until after the beginning of this suit. In said foreclosure proceedings the city of Pontiac was made a party defendant, but was afterwards dismissed without prejudice to either party, and on June 23, 1899, the Illinois Trust and Savings Bank instituted a suit at law against the city for the recovery of said hydrant rentals, which suit is still pending.

MILLARD R. POWERS, for plaintiff in error.

W. C. GRAVES, City Attorney, and A. C. NORTON, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This record presents no question of the competency of any of the testimony. If the stipulation reserves the right to object generally as to competency of testimony, no such objection was interposed. The bill of exceptions shows that no propositions of law were presented. Four days after the judgment, plaintiff filed with the clerk propositions of law and requested that the judgment be vacated in order to permit their presentation. That motion was denied. The only exception preserved in this record is an exception by each party to the judgment of the court. The only question presented is whether under all the evidence, treating it all as competent or as heard without objection, the judgment is sustained by the facts. The record raises no question of law, except as legal principles are involved in the question whether the proof sustains the judgment. The judgment erroneously awards an execution against the city, but neither party has assigned that for error, or argued that the judgment is erroneous in that respect, and the error is therefore waived. The title of the cause in the record

kept by the clerk is defective, so that the judgment there appears to be in favor of "Pontiac Light & Power Co.," a party not otherwise known to this record, but that defect is waived in like manner.

Plaintiff's argument is chiefly based upon the position that the court is here enforcing a forfeiture, and plaintiff insists forfeitures are not favored; that he who seeks to enforce a forfeiture is held to a strict compliance with all prescribed conditions, and that the courts will seize upon any act which can reasonably be construed as a waiver of a forfeiture; and then plaintiff insists that by continuing to use water from the hydrants for fire and other purposes, defendant waived the forfeiture. We conclude the basis of this argument is unsound. Though the word "forfeit" is used in the ordinance and in the notice by the city to the water company, which followed the language of the ordinance, yet we conceive that a forfeiture was not intended either by the ordinance or the notice, in the sense in which that word is used in the argument of plaintiff and in the cases cited by it. There was no effort by the city to forfeit the franchise of the water company, to require it to cease doing business or to compel it to remove its mains from the streets. It, or the party succeeding to its franchises and property under the foreclosure, is still exercising all the rights and privileges given by the ordinance, and though the water it supplies is not fit for and is not used for drinking, culinary or domestic purposes, yet it continues to supply water to customers for other purposes, which produces to it, from sources other than the city, an annual income of about $7,000, which income is increasing. The city was contracting not merely, and not chiefly, for the purpose of securing a supply of water for protection against fire. It had a right to make a contract for the benefit of the inhabitants of the city; and the first two sections of this ordinance show that to secure a supply of pure, wholesome water for drinking, culinary and domestic purposes, put into the homes of the inhabitants of the city who chose to take it and pay the prescribed rates, was one of the chief pur-

poses which the city meant to accomplish by this ordinance. It was manifest that if, after the water company had torn up the streets and put down its mains, it should fail or refuse to furnish that quality of water, a great loss and injury would result, not, indeed, primarily to the city as a corporation, but to the citizens for whose health and comfort it was so properly legislating and contracting. Yet if the city were left to sue the water company for money damages for such a breach of contract it would be difficult, and perhaps impossible, to show what sum ought to be awarded as the damages therefor. It was accordingly provided, in effect, in the ordinance, that if the water company should fail to furnish water fit for the purposes above stated the city might give it notice, and if the water company did not within sixty days thereafter maintain such filtering processes as would make the water suitable for those purposes, then from and after the expiration of said sixty days and until such time as the water company did install filtering processes which would make the water fulfill the demands of the contract, the city should be relieved from paying hydrant rentals while still using the water from the hydrants as before for fire and other prescribed purposes. This was the way the contract provided that the city should be compensated for such a breach of contract. It was no doubt the opinion of the contracting parties that the loss of hydrant rentals would be sufficient incentive to induce the water company to fulfill its contract. The parties were evidently satisfied that there were filtering processes which would render the water pure and wholesome and fit for domestic use, and the water company undertook to supply them if they were needed, and agreed that the city should be relieved from paying the hydrant rentals during any period in which they failed to render the water pure and wholesome, after sixty days' notice to the water company. It is worthy of note in this connection that there is no proof that the water company could not have furnished pure and wholesome water during all the time it was so in default. As we are of opinion that the provision for with-

holding payment of hydrant rentals during such period of default by the company was not a forfeiture, but a provision for stipulated and liquidated damages, it follows that we consider the authorities cited upon that subject by plaintiff are not in point.

It is argued that by accepting the works when no filtering processes had been installed, the city waived the right to insist upon them, or to withhold water rentals because of a failure afterwards to install such filtering processes as would render the water pure and wholesome, as required by the contract. Section three of the ordinance did not provide for a preliminary test of the quality of the water, but only of the power and capacity of the water works to throw a certain number of streams to a specified height through nozzles of a certain diameter. The stipulation does not show that the city authorities then knew that the water was impure and unfit for domestic use, but the contrary is implied, and it is stipulated that the city ascertained these facts in June, 1897. As was said in Farmers Loan and Trust Company v. Galesburg, 133 U. S. 156, on page 178, "Nor could the test required by the ordinance and satisfactorily made by the water company be a test of anything but the pressure power of the works. It could not be a test of the quantity of water which would thereafter be supplied by the works nor of its continuing quality for domestic purposes."

Plaintiff argues that if defendant did not intend to pay hydrant rentals after sixty days from its notice to the water company, it should have ceased to use the hydrants at the end of said sixty days; and that its use of the water from the hydrants after that date was an abandonment of its notice, or at least left it liable to pay at the contract rate for its subsequent use of the hydrants. What has already been said disposes of this contention. We are satisfied the ordinance did not mean that, when the city was relieved from paying hydrant rentals because of the failure of the water company to comply with its contract after sixty days' notice, the city was prohibited from thereafter using

the hydrants during the time that hydrant rentals were suspended. On the contrary we are of opinion that the contract meant that the city should use the hydrants during the period when the water company was so in default, but without paying for their use.

The notice which was served upon the superintendent of the water company was signed by the city clerk, and professes to be by virtue of an order of the city council made on July 2, 1897. Among the proceedings of the city council on July 2, 1897, was a motion adopted by the city council that the city attorney prepare a notice to the water works company that the city would withhold all hydrant rentals till it complied with the ordinance by furnishing pure water. It is argued that the city council only voted to have a notice prepared, and that it was obviously intended by the council that such notice should be submitted for its future consideration; that the council did not authorize any one to serve a notice on the company, and that the notice by the city clerk was unauthorized and of no effect. This argument ignores that part of the stipulation which states that the city caused this notice to be served. That is an admission that the notice was the act of the city. That admitted fact answers the argument. It is also argued service of the notice upon the superintendent of the company was not sufficient, but, first, it should have been served upon the trustee, and second, it should have been served upon the president of the water company. There is no provision in the ordinance for notice to the trustee. Section two thereof, under which this notice was given, only contemplates notice to the water company. The stipulation is that the notice was served upon H. L. Traphagen, that he was then the superintendent of the water company, and was operating its plant at Pontiac. The notice was that unless within sixty days the water furnished by the water company was so filtered as to comply with and be fit for the uses prescribed in the franchise to the water company, hydrant rentals from the city would be forfeited. This notice related to the business which the

superintendent was conducting for the water company. Notice to an agent is notice to his principal, where it arises from or is at the time connected with the subject-matter of his agency. Mullanphy Savings Bank v. Schott, 135 Ill. 655; Coryell v. Klehm, 157 Ill. 462; Germania Life Ins. Co. v. Koehler, 168 Ill. 293. But, further, there is not only no proof that the superintendent did not discharge his obvious duty of communicating this notice to his principal, but it is stipulated that in July, 1897, in pursuance of this very notice, the water company bought, erected and used a filtering apparatus, though it failed to purify the water. As the company installed the filtering apparatus in July, 1897, in pursuance of this notice, it follows that it did receive the notice and understood its purport.

It is argued that section two of the ordinance only required the water company to *maintain* filtering processes and that the ordinance nowhere required the water company to *construct* them. This ignores section one, which provided that the water should be at all times " filtered, if necessary," which certainly imposed upon the water company the duty of providing the necessary filtering processes. Section two said : " The water company shall at all times be required to maintain such filtering processes as shall render the water suitable for the purposes heretofore mentioned, and in case such company neglects or refuses to maintain such filtering processes after sixty days' notice by said city, then said company shall forfeit the hydrant rental prescribed in the ordinance until such filtering processes *are provided.*" Those last words required that the water company should *provide* filtering processes. To find out what the " purposes heretofore mentioned " are, we turn to section one and the first part of section two. We find that section one calls for " good and wholesome water," " to be at all times settled, cleansed and purified, filtered, if necessary, and suitable for fire, drinking, domestic and other purposes;" and in the first part of section two, that the water shall not be subject to any sewerage pollutions from the city drains and shall be suitable for the

requirements of the city and its inhabitants. It is stipulated that the water company has not at any time maintained such filtering processes as to render the water furnished by it to the city or its citizens suitable for drinking or domestic purposes, and that such water ever since June 17, 1893, was not suitable for drinking and domestic purposes, but was impure, unhealthy and impregnated with organic matters. This then is a clear admission that the water company has not kept its contract, but has broken it in the very particular which, under section two of the contract, after sixty days' notice, authorized the city to forfeit the hydrant rentals until the required filtering processes were provided. The city gave the notice, and after the sixty days no further hydrant rentals could be collected until filtering processes were maintained which rendered the water suitable for the purposes above named.

It is argued these bondholders whom the trustee represents, and for whose exclusive benefit it is stipulated this suit is prosecuted, are innocent purchasers, not affected by the failure of the water company to perform its contract. We are of opinion that when the bondholders purchased these bonds they were charged with notice that the city was not a party to the bonds, and that the liability of the city to pay hydrant rentals depended upon a continued compliance by the water company with its contract. They were bound to ascertain the terms of the ordinance, which is the contract between the water company and the city. The bonds they bought were evidences of the indebtedness of the water company, and not of the city. The ordinance informed them the city would not be liable for hydrant rentals if the water company failed to maintain such filtering processes as would render the water suitable for fire, drinking, domestic and other purposes, for the city and its inhabitants; and that good and wholesome water, settled, cleansed, purified, and filtered, if necessary, was demanded by the contract. The rights of these bondholders to have the hydrant rentals applied upon their interest was subject to the continuing compliance by the water company with the

terms of the contract. The rights of the bondholders depended upon performance by the bondmakers.' The water company could not by giving bonds expose the city to a greater liability to the bondholders than it was under to the water company. Farmers Loan & Trust Co. v. Galesburg, *supra.*

The court gave judgment for such hydrant rentals as had accrued prior to the service of this notice and remained unpaid, and for hydrant rentals during the period of sixty days after the service of the notice, and interest on that sum. We are of opinion the court correctly held that hydrant rentals were not stopped by the mere failure of the company to furnish the quality of water required by the contract, but that such rentals continued to run until sixty days after the notice was given to the water company. The provisions above quoted from section eight of the ordinance bound the city to pay legal interest on all sums due from it, and it is not claimed or shown that more than legal interest was awarded.

The judgment is therefore affirmed.

*Affirmed.*