SECOND DISTRICT—MARCH, 1909.     57

Pontiac Water, Light & Power Co. v. City of Pontiac, 149 App. 57.

Pontiac Water, Light & Power Company, for use etc., Plaintiff in Error, v. City of Pontiac, Defendant in Error.

Gen. No. 5,063.

1. APPEALS AND ERRORS—*what essential to save questions.* Exceptions to the rulings complained of contained in the record and shown in the abstract are essential to preserve the propriety of such rulings for review.

2. RES JUDICATA—*when lack of identity of parties does not affect.* In an action brought by a water company in which a receiver for such company is substituted, which action is carried on for the use of the bond-holders of such company, a judgment rendered therein is *res judicata* in a subsequent action so far as the subject-matter of the two suits is the same.

3. RES JUDICATA—*extent of judgment as.* In an action of assumpsit brought by a water company against a municipality to recover for water alleged to have been used by the latter, all claims for water existing against such municipality at the time of the commencement of such action are deemed to have been included therein and the judgment rendered in favor of such municipality is *res judicata* in a subsequent action as to all claims for water existing at the time of the commencement of the action.

4. WATERWORKS COMPANIES—*when municipality not liable for water used in flushing sewers.* Held, under the evidence, that the municipality in question had, with the consent of the waterworks company, made a substitution of its method of flushing sewers, that is to say, that the use of automatic flushers in lieu of hydrants, as contemplated by the franchise ordinance, was authorized by the act of the superintendent of such company and that such municipality was liable only for the amount provided for in such ordinance in the event of the use of hydrants so long as there was no improper use made of such flushers.

5. CITIES, VILLAGES AND TOWNS—*when indebtedness in excess of constitutional limitation precludes liability.* An obligation payable in the future is a debt within the meaning of the constitution. It becomes due when the commodity is furnished and if the aggregate indebtedness already exceeds the constitutional limitation, no further contract for the payment of money can be enforced while the municipality is so situated.

Assumpsit. Error to the Circuit Court of Livingston county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed March 24, 1909.

58    APPELLATE COURTS OF ILLINOIS.

Pontiac Water, Light & Power Co. v. City of Pontiac, 149 App. 57.

MILLARD R. POWERS and A. C. NORTON, for plaintiff in error.

BERT W. ADSIT and McILDUFF & THOMPSON, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

This is an action of *assumpsit* brought by the Pontiac Water, Light & Power Company, plaintiff in error, for the use of eighty bond holders, against the city of Pontiac, defendant in error. The bill of particulars states that the suit is brought to recover $91,224, with interest thereon from October 16, 1902, at five. per cent per annum, for 564,896,000 gallons of water delivered to the city at certain flushing tanks and used by the city for flushing the sewers in said city between April 25, 1900, and October 16, 1902, at twenty-five cents per thousand gallons. The declaration contained counts upon an *indebitatus assumpsit,* a *quantum meruit* and a *quantum valebant.* There was a plea of the general issue. There seem to have been other pleadings. Afterwards a jury was waived and the cause was submitted under the declaration and the general issue, with an agreement that all other pleadings should be disregarded and that any competent evidence might be offered by either party and admitted by the court as if offered under appropriate special pleadings. There was a trial and a finding and a judgment for the city, from which plaintiff below prosecutes this writ of error. Plaintiff in error offered propositions of law, some of which were refused and others were held to be the law but not applicable to the case. An examination of the bill of exceptions in the record shows that plaintiff in error did not except to the action of the court on these propositions of law. They therefore present no question for our determination. After the evidence was closed, plaintiff in error entered a motion to exclude certain evidence. This was denied. The abstract is made to

show an exception to this ruling and also to the refusal
of the court to exclude several other items of testi-
mony. The language thus abstracted is found on page
229 of the record and a careful examination of that
language shows that it does not contain any exception
whatever to said rulings refusing to exclude testimony.
It is probable that those rulings were there collected
with an intention to insert exceptions by plaintiff in
error, but the exceptions are entirely omitted. The
abstract of that page is incorrect and untrue, and the
refusals to exclude there set out stand not excepted
to and present no question. These eliminations nar-
row the field of discussion.

In 1891 the city of Pontiac adopted an ordinance
authorizing certain parties to establish and operate
waterworks in the city of Pontiac for the purpose of
supplying the inhabitants of the city with wholesome
water for domestic and other purposes. It provided
that sixty fire hydrants should be established for
which the city should pay a rental of $2500 per year,
and provided for the location of additional hydrants
for which the city should pay a rental of $45 each per
year. It was ordained that these hydrants should be
used only for the purpose of extinguishing fires, for
reasonable practice of the fire department, and for
flushing gutters and sewers through a hose and fire
nozzle of one-inch diameter, and that in flushing no
one hydrant should be used exceeding ten minutes
in one week; that not more than one opening should
be turned on at one time, and that there should be no
flushing during a fire or without notice to the water
company. The works were erected and became the
property of plaintiff in error, by whom they were
operated till a receiver was appointed. The ordinance
provided that if the water company should issue bonds,
the hydrant rentals should be pledged for the payment
of the interest on said bonds. It did afterwards issue
eighty bonds and secured them by a trust deed on the
property. There was a default in the payment of the
bonds and a foreclosure proceeding was instituted by

the trustee, which, after pending several years, resulted in a sale of the plant and in a deficiency of over $30,000. The waterworks were accepted by the city council as a compliance with the ordinance, but in fact the water company never furnished water fit for domestic use as required by the ordinance, and thereafter, on July 3, 1897, the city served notice on the water company that unless within sixty days it furnished to consumers water so filtered as to be fit for the uses prescribed by the ordinance, the hydrant rental from the city would be forfeited. The water company did not thereafter comply with the ordinance and the city ceased to pay hydrant rentals. Thereafter the water company brought suit against the city to recover for said hydrant rentals. Afterwards the pleadings were so amended as to make the trustee the plaintiff for the use of the bondholders. That cause was tried. It was therein held that the city ceased to be liable for hydrant rentals upon the expiration of sixty days from said notice, but that it still had the right to use said hydrants for the purposes specified in the ordinance. That judgment was affirmed by this court in Illinois Trust & Savings Bank v. City of Pontiac, 112 Ill. App. 545, where said ordinance is fully stated. The Supreme Court affirmed our decision under the same title in 212 Ill. 326, but without a discussion of any of the questions here involved.

For some time after the installation of the water-works, the city used the hydrants with a hose and nozzle for flushing its sewers as provided by the ordinance. Afterwards it abandoned that method of flushing the sewers, and installed and used certain automatic flush tanks for the purpose of flushing sewers. In each of these a tank of certain capacity was placed, controlled by such appliances that the city superintendent of sewers was able to so set them that they would fill and flush either twice or once in twenty-four hours. These tanks had an iron cover fastened on by a lock, but they were frequently opened and

interfered with by private citizens by setting the apparatus so that the tank would flush much oftener. It also appeared that they were frequently so adjusted by some one that they remained entirely closed and did not operate at all for long spaces of time. This is a suit by the water company for the use of said bondholders to recover compensation for the water used in flushing said sewers through said automatic flushing tanks between April 25, 1900, and October 16, 1902. Experts testified for plaintiff in error as to the amount of water that would pass through these tanks into the sewers each day if set to discharge as often as some of plaintiff in error's witnesses testified that they had seen them discharge, and other experts testified as to the reasonable value of the water. The defense contended that the automatic flush tanks were substituted for the hydrant for flushing purposes with the consent of plaintiff in error and that it was only bound to pay therefor when it was bound to pay hydrant rentals; that the judgment in the former suit is a bar to this action; and that during all the period covered by this suit the city was indebted beyond the constitutional limit and could not lawfully bind itself to pay for this water during this period of time.

After the city began the installation of these flush tanks plaintiff in error's superintendent and manager of the waterworks sent to Chicago for one Dickinson, who came to Pontiac, examined the flush tanks and their method of operation and highly approved the same and authorized the city to install them. It is argued by plaintiff in error that it is not shown by competent evidence that Dickinson was an official of plaintiff in error and had authority to bind it. The superintendent of waterworks, the manager of plaintiff in error, sent for Dickinson, was with him during the making of this examination, held him out to the city as having authority in the matter, and immediately thereafter ceased all opposition to the installation of the flush tanks which he had till that time opposed.

We are of the opinion that the acts of the superintendent bound plaintiff in error and justified the finding by the court that plaintiff in error consented to the substitution of the flush tanks for the hydrants for flushing purposes. Unless, therefore, the city by its officers, as distinguished from intermeddling by private citizens, used said flushing tanks in some improper manner so as greatly to exceed the use of the amount of water for which they were intended, the city would only be liable to pay the hydrant rentals, and would not be bound to pay for the use of the flush tanks if it was not bound to pay hydrant rentals.

Though the former suit went to judgment in the name of the trustee instead of the water company as plaintiff, yet it was begun by the water company, plaintiff in error here, and the substitution of its trustee as plaintiff must have been with the consent of plaintiff in error. That suit also was brought for the use of the same bondholders who are the usees in this suit. We therefore hold plaintiff bound by that judgment, although it was not nominally a party to the suit when the judgment was entered. That suit was begun on March 30, 1902, after the expiration of most but not all of the time covered by this suit. In that suit it was finally adjudged that the city was not liable to pay hydrant rentals after the expiration of sixty days from the service of the notice already mentioned. We conclude that the former judgment is conclusive against plaintiff in error as to the time covered by its bill of particulars between April 25, 1900, and March 30, 1902, for two reasons: first, because the flush tanks were substituted for the hydrants for flushing purposes by consent of plaintiff in error; and second, because the declaration and bill of particulars in the former suit were broad enough to cover the water used in said flush tanks. The declaration in that case was in evidence in this, and one count thereof was for goods, wares, merchandise, *water,* and property furnished by said party to said defendant, and the bill

of particulars attached to the declaration, among other things, claimed a certain sum for "money due for goods, wares, merchandise, *water,* and property." The cause of action of plaintiff in error in that suit could not be split up. It sued to recover for water and was therefore bound to prove in that suit all its claims for water alleged to be due when the suit was begun, and the final judgment in that suit must be held to bar all claims it had against the city when that suit was begun for water furnished by it to the city, whether it made proof thereof in that case or not. Moreover, as we conclude that the flush tanks were substituted for the hydrants for flushing purposes with the consent and acquiescence of plaintiff in error, and as the misuse of said flush tanks, if there was any such misuse, was not by the city or its officers, but by the interference of private individuals for whose conduct the city cannot be held responsible, and as it was established by the former judgment that long before the date covered by this suit the city had ceased to be liable to pay hydrant rentals, and as it is not shown that any new condition had arisen thereafter which would give the plaintiff in error any cause of action against the city for the use of water for flushing purposes, it follows that, on the same principle on which the former cause was decided, plaintiff has no cause of action against the city for the water used in said flushing tanks between March 30, 1902, and October 16, 1902.

It appears to be conceded in argument that if the evidence introduced by the city on that subject was competent, then during all the time covered by this suit the city had exceeded the constitutional limit to the indebtedness of a municipal corporation, namely, five per cent of the assessed valuation of the property within the city, and therefore the city is not liable. An obligation payable in the future upon such a contingency as the furnishing of water in the future is a debt within the meaning of the constitution. It be-

comes due when the water is furnished, and if the aggregate indebtedness already exceeds the constitutional limitation, no further contract for the payment of money can be enforced while the city is so situated. City of Chicago v. McDonald, 176 Ill. 404; Lobdell v. City of Chicago, 227 Ill. 218. The deputy county clerk gave evidence as to the assessed valuation of the property in the city for several years, including the period covered by this last suit. He gave a summary of what appeared upon the assessor's books. It may be that the assessor's books themselves should have been produced, but the objection was not made on that ground. It was necessary to have a witness make a summary of what the books showed. The city offered in evidence a summary prepared by one S. E. Sims, showing the bonded indebtedness of the city outstanding and unpaid upon the first day of each month covered by this suit. Sims was not called as a witness, and it is insisted that error was committed by receiving in evidence this tabulated statement. We think there are two answers to this position: First, we think the objection that the witness was not produced and the statement sworn to was waived. The objection made was that it was incompetent, immaterial and irrelevant. Counsel for the city then said: "The objection of secondary evidence is waived?" The record shows that this sentence ended with an interrogation. Counsel for plaintiff in error then said: "Oh, no, not on that account." While the first part of that answer might be thought to mean that the objection that it was secondary evidence was not waived, yet when the whole of the answer is considered, we think that the meaning was that he was not objecting on the ground that it was secondary evidence. We think counsel and the court so understood it, for it was obvious that an unverified statement of that kind could not be competent if that particular objection was made. But, second, plaintiff in error did not except. The court at that time permitted it to go in under objection without deciding whether it was competent or incompetent, and there

was no exception then, and the exception to the refusal to exclude that paper which the abstract says is found on page 229 of the record we have already stated is not in fact there. The bill of exceptions does not contain any exception by plaintiff in error to the use of that tabulated statement in evidence.

We find no reversible error in the record. The judgment is therefore affirmed.

*Affirmed.*