THE NORTH BRITISH AND MERCANTILE INSURANCE COMPANY

*v.*

CHARLES F. STEIGER.

*Filed at Springfield March 28, 1888.*

1. INSURANCE—*agent's knowledge of change of appliances, as a waiver of the question of the increase of risk thereby.* A policy of insurance provided that if the insured premises should at any time be occupied or used so as to increase the risk, the policy should become void. After the giving of the policy, and before any loss, a fire-dryer was substituted for a steam-dryer used in the building insured, in making hominy and meal, which the company claimed increased the risk. On the trial in an action to recover for a loss, the court instructed the jury, that if the existence of the fire-dryer in use in connection with the insured property was known to the agent of the defendant company before the loss by fire, and the company did not cancel the policy, then the company waived the right to insist, on the trial, that the use of such dryer was in violation of the condition of the policy: *Held,* that while the instruction might not be technically correct, in omitting to submit to the jury the question of the agent's knowledge of the increase of the risk, the rule in respect to the question of waiver was correctly given.

2. SAME—*over-insurance—knowledge of agent as a waiver of condition.* If an insurance company, with knowledge on the part of its agents that a party has already insured property for a greater sum than it allowed, or if such agents are chargeable with notice of such over-insurance, and afterwards deliver to him a policy on the same property, containing a clause against over insurance, this will amount to a waiver of the condition as to over-insurance, and the policy will be good, notwithstanding such over-insurance.

3. APPEAL—*reviewing facts—and what is a question of fact.* Whether the substitution of a "fire-dryer" in the place of a "steam-dryer" in a hominy mill increases the risk of an insurance company insuring the mill and machinery, etc., is a question of fact, and the decision of the Appellate Court in relation thereto is final.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

6—124 ILL.

Messrs. JOHN M. & JOHN MAYO PALMER, for the appellant:

An increase of the risk, after the delivery of the policy, by the assured, or those in privity with him, avoids it as conclusively as the breach of any other condition. May on Insurance, (2d ed.) secs. 220, 221.

The court erred in instructing the jury as to the waiver of the condition as to acts increasing the risk. Knowledge of improvements by the company's agents, without knowledge that they increased the risk, did not make it necessary to cancel the policy.

The terms "estoppel" and "waiver," though not technically identical, are so nearly allied, and, as applied in the law of insurance, so like in the consequences which follow their successful application, that they are used indiscriminately by the courts. May on Insurance, (2d ed.) sec. 505.

A waiver presupposes a knowledge of the right waived, and is not to be inferred from a purely negligent act, or one done under a misapprehension of the real condition of the rights of the parties at the time. *Miller* v. *Insurance Co.* 110 Ill. 102.

A party should not be held to have waived a forfeiture, in the absence of facts constituting an estoppel, unless he intended to waive it, nor can he be held to have waived it unless he knew the facts constituting the forfeiture.

It is therefore held, that in every instance, knowledge of the forfeiture is made necessary before there can be a waiver. (*Robertson* v. *Insurance Co.* 88 N. Y. 541.) And so it is held, with respect to the unauthorized acts of the agents, as binding upon the principal. *Bennecke* v. *Insurance Co.* 105 U. S. 355.

While the knowledge of the agent is imputable to the principal, yet this holds only as to knowledge acquired in his capacity as agent. Mere rumors, or matters coming to his knowledge in his individual capacity, are not imputable to the principal. Neither is the insurer affected by knowledge as to the risk, or any changes therein, that come to the agent, in

his individual capacity, after the contract is made.　Wood on Insurance, sec. 682.

Mere casual conversations, in which the change is talked about with the insurer, or his agent, do not establish notice or knowledge of the change.　Knowledge in fact, or notice of the extent of the change, must be shown.　*Sykes* v. *Insurance Co.* 34 Pa. St. 79.

Upon familiar principle, if there is no knowledge, or if the state of facts be not such that knowledge ought to be inferred of the breach of the condition or neglect of duty, there can be no waiver, as no one can be presumed to have waived that, the existence of which he has not known.　May on Insurance, sec. 506.

In order to estop the insurer, the act claimed as a waiver must be shown to have been done with a full knowledge of the forfeiture.　Wood on Insurance, sec. 681.

Messrs. BRADLEY & CARPENTER, for the appellee:

When the assured fully discloses to the company, or its agent, the necessary facts, or they are otherwise cognizant of them, and they dispense with any act on his part, they are estopped from denying the description adopted in the policy. *Insurance Co.* v. *Fish,* 71 Ill. 620 ; *Insurance Co.* v. *Wright,* 22 id. 473 ; *Insurance Co.* v. *Cormick,* 24 id. 461 ; *Insurance Co.* v. *Chesnut,* 50 id. 116 ; *Martin* v. *Insurance Co.* 11 Barb. 624 ; *Insurance Co.* v. *Schettler,* 38 Ill. 166 ; *Insurance Co.* v. *McDowell,* 50 id. 128 ; *Insurance Co.* v. *Nelson,* 65 id. 415 ; *Insurance Co.* v. *Nelson,* 75 id. 548 ; *Insurance Co.* v. *Wells,* 89 id. 82 ; *Insurance Co.* v. *McKee,* 94 id. 494.

Insurers can not take advantage of omissions or misstatements as to any fact which it was their duty to state correctly.　*Burley* v. *Insurance Co.* 36 N. Y. 550 ; *Peck's case,* 22 Conn. 575 ; *Bebee's case,* 25 id. 51 ; *Franklin's case,* 42 Mo. 457 ; *Beal's case,* 16 Wis. 241.

In the case of *Malleable Iron Works* v. *Insurance Co.* 25 Conn. 465, the court says of an agent equipped for business, as Gehlman was here: "He had an implied power to explain the questions and answers required, and that his error or omissions could not be given in evidence as a breach of warranty by his principals." This rule is supported by *Plumb's case*, 18 N. Y. 392; *Rowley's case*, 36 id. 350; *Moleet's case*, 5 Rawle, 342.

The same rule is applicable to a case where the policy is prepared by the agent without any written application therefor, as to the recitals of fact in the written portion of the policy, as would be to a case where such application was made,—that is, that the same rule applies to the preparation of the policy that would apply to the preparation of the written application therefor. *May's case*, 25 Wis. 306; *Schettler's case*, 38 Ill. 166; *Wilkinson's case*, 13 Wall. 236; *Insurance Co.* v. *Mahone*, 21 id. 156.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action of assumpsit upon a fire insurance policy, dated October 6, 1881, and running one year, brought by appellee against the appellant company in the circuit court of Sangamon county, which resulted in verdict and judgment for the plaintiff, and in the affirmance of such judgment by the Appellate Court, whence the case is brought before us by appeal.

The property insured consisted of a hominy mill, being a two-story brick building and one-story brick building adjoining, together with engine, boilers, shafting, etc., situated just outside of the western limits of Springfield. It was destroyed by fire on April 16, 1882. The case has been three times tried in the circuit court and has also been passed upon three times by the Appellate Court.

The defence made was two-fold. First, it was claimed that the plaintiff had violated the contract of insurance by increas-

ing the risk after the execution of the policy and before the occurrence of the fire. Second, it was contended, that the plaintiff was guilty of a further violation of the contract by procuring a larger amount of insurance in other companies than was permitted by the terms of the policy sued upon.

With reference to the first ground of defence, the policy provides that, if the premises shall at any time be occupied or used so as to increase the risk, or the risk be increased by the erection or occupation of neighboring buildings, or by any means whatever within the control of the insured, without the consent of the company indorsed on the policy, the policy shall become void. The manner, in which the risk is said to have been increased, was by the substitution of a "fire-dryer" for a "steam-dryer." The proof shows that a "dryer" is always used in mills, where hominy, meal, etc., are manufactured, in order to decrease the moisture in the grain and thus render the product more salable in the market. When the policy in this case was issued, the "dryer" in use in plaintiff's mill was a "steam-dryer." Before the destruction of the property on April 16, 1882, the occupants of the mill, holding as tenants under the plaintiff, had introduced a "fire-dryer" and were using it in the place of the "steam-dryer." The difference between a "steam-dryer" and a "fire-dryer" was explained in *German-American Ins. Co.* v. *Steiger*, 109 Ill. 254, and need not be repeated here.

Whether or not the risk was increased by the substitution of one kind of "dryer" for another was a question of fact, and the decision of the Appellate Court in reference thereto is final. *Schmidt* v. *Peoria Marine and Fire Ins. Co.* 41 Ill. 295; *German-American Ins. Co.* v. *Steiger, supra.*

Complaint, however, is made of the second instruction given for the plaintiff. That instruction told the jury, that, if the existence of a fire-dryer, in use in connection with the insured property, was known to the agent of the defendant before the happening of the loss of the property by fire, and the defend-

ant did not cancel the policy, then the defendant waived the right to insist at the trial upon the existence and use of such dryer as being in violation of the conditions of the policy. The objection urged is, that the defendant is held responsible if its agent knew of the existence of the fire-dryer, whereas it should only be held responsible in case such agent knew of an increase of the risk. In other words, it is said, that the defendant must have had knowledge not merely that the fire-dryer was in use but that the effect of such use was to increase the risk, and that the instruction is erroneous in ignoring this distinction. The instruction may not be technically accurate in the respect thus indicated. But we do not think that it could have misled the jury when read in the light of the testimony and in connection with the other instructions given for the defendant.

It was contended, on the trial, by the defendant, that the use of the fire-dryer increased the risk, and, by the plaintiff, that it did not increase the risk. Both sides introduced a large amount of testimony in favor of their respective positions upon this question. The risk was not claimed to have been increased in any other way than by the use of the fire-dryer. Hence, the subject of the fire-dryer was only presented to the jury in connection with and as bearing upon the effect of its use upon the risk. They could not have understood under the instructions given for defendant, that knowledge of the existence of a fire-dryer implied anything else than a knowledge of increase of risk. The first instruction given for defendant told them, if they believed from the evidence, that, after the issuance of the policy, the plaintiff or his lessees increased the risk without the knowledge or consent of the defendant, etc., then the verdict should be for the defendant. The fifth instruction given for defendant told them, if they believed from the evidence, that, after the delivery of the policy, the premises were so occupied or used as to increase the risk, without the knowledge or consent of the defendant, such increase of

risk would avoid the policy, and the verdict should be for the defendant. The seventh instruction, given for defendant, was as follows:

"The court instructs the jury, that the defendant can not be held to have waived the condition of the policy with respect to the increase of risk, unless the jury believe, from the evidence, the defendant, by its agents, had knowledge of the extent and character of the increase of risk, if the risk was increased; and with such knowledge of the extent and character of such increase of risk, consented thereto, or so conducted themselves toward the plaintiff as to induce a reasonable belief in the mind of the plaintiff that such increase of risk would not be insisted upon by the defendant as a defence to the policy."

As to the second ground of defence set up on the trial below, no instruction in relation to it was given for the plaintiff, nor was there a refusal of any instruction asked by the defendant upon that subject. The policy provides, that it shall become void, "if the assured shall have, or shall hereafter make any other contract of insurance, whether valid or not, on the property hereby insured, or any part thereof, without the consent of the company written hereon."

The evidence tends to show that, on October 6, 1881, plaintiff had more insurance in other companies upon the property afterwards destroyed than was permitted by the terms of the policy in the defendant company. But the evidence also tends to show, that defendant's agents, before delivering to plaintiff the policy sued on in this case, had knowledge of the amount of such over-insurance, or were referred by plaintiff, in answer to their own inquiries upon the subject, to parties within easy reach, from whom they could have derived such knowledge. In other words, the proof tends to show a waiver by defendant of the requirement of the policy as to over-insurance. Whether there was such a waiver or not was a question of fact fairly presented to the jury under the instructions asked by defendant and given in its behalf.

By one of those instructions the jury were told "that if they believed from the evidence, that, by the terms of the policy the plaintiff was permitted to obtain or carry concurrent insurance to the amount named in the policy, and that at that time or afterwards or both, without the knowledge or consent of the defendant, he obtained a larger amount of insurance than that limited in the policy, such act would avoid the policy" and the finding should be for the defendant. By another, they were instructed as follows: "If the plaintiff relies upon a waiver of any of the conditions of the policy by the defendant, the burden of proving such waiver is upon himself, and unless the plaintiff has proven, by a preponderance of the evidence, that the conditions of the policy which he insists were waived, were actually waived, and, if the jury believe, from the evidence, that the conditions were disregarded by the plaintiff, then their verdict should be for the defendant."

We find no error in the record which would justify us in a reversal of the judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*