SOUTHWESTERN SURETY INS. CO v. DAVIS et al.

No. 7435.    Opinion Filed December 14, 1915.

Rehearing Denied April 4, 1916.

(156 Pac. 213.)

1. **CORPORATIONS—Powers.** Corporations possess such powers as are expressly conferred upon them by law, and such implied powers as are necessary to enable them to exercise and enjoy the powers expressly granted.

2. **BUILDING AND LOAN ASSOCIATIONS—Liability on Contracts.** Where a building and loan association enters into a contract that is germane to the purpose for which it is formed, is not in violation of its charter, nor against the public policy of the state or any statute prohibiting it, and by its promise induces a party relying thereon to expend money and perform his part of the contract, the corporation will be liable thereon.

3. **BUILDING AND LOAN ASSOCIATIONS—Statement of Business Methods—Presumption of Filing—Surety on Bond.** Where a building and loan association, charged with the duty of filing a statement showing the manner of conducting its business, executes a bond as required by section 1321, Rev. Laws 1910, and receives a certificate to transact business, the court, in the absence of a showing to the contrary, will presume that such statement was filed, and the surety will be held to have executed such bond with knowledge of the manner of conducting its business, and will not be permitted to question the right of the association to conduct its business in such manner.

4.    **PRINCIPAL AND SURETY—Bond** of Suretyship—**Construction.** Section 1346, Rev. Laws 1910, provides that the rule of the common law requiring a strict construction of the obligation of a surety shall have no application to the obligations of a surety for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance.

5.    **SAME.** If language in a bond of suretyship for hire is ambiguous and susceptible of two constructions, one of which will give effect to the bond, the other render it void at the time of its execution, that construction should be adopted which will make it effective.

6.    **EVIDENCE—Presumption—Discharge of Official Duties.** Until the contrary is made to appear, the law presumes that officers have discharged the duties which the law imposes upon them.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by J. Ramsey Davis against the Southwestern Surety Insurance Company and another. Judgment for plaintiff, and defendant named brings error. Affirmed.

*G. A. Paul,* for plaintiff in error.

*L. H. Prichard, C. H. Shubert,* and *R. M. Campbell,* for defendants in error.

HARDY, J. On October 31, 1914, plaintiff filed his petition in the district court of Oklahoma county, against the Prudential Loan & Trust company, and the Southwestern Surety Insurance Company, asking judgment against said defendants in the sum of $308, on a certain bond executed by the Prudential Loan & Trust Company, with the Southwestern Surety Insurance Company as surety thereon. Plaintiff alleged that the business of the Prudential Loan & Trust Company consisted in selling what is known as home and saving gold bonds, for seven of which plaintiff made application, which were issued to him on October 5, 1911, and that plaintiff paid therefor

the full purchase price thereof; that on May 1, 1912, the Prudential Loan & Trust Company became insolvent and unable to fulfill its contracts, and on October 26, 1912, a receiver was appointed for said company, who administered the assets thereof and paid plaintiff the sum of $77. Issues were joined and trial resulted in judgment for plaintiff, and defendant Southwestern Surety Insurance Company brings error.

The Prudential Loan & Trust Company was chartered under the laws of this state, regulating building and loan associations, as found in chapter 15, arts. 7, 8, Rev. Laws 1910, and its sole method of doing business was by the issuance of said gold bonds, the conditions of which, briefly stated, are as follows: (1) By the payment of 10 per cent. of the purchase price the holder became eligible for a loan from the loan fund, which was created as follows: 90 per cent. of the money received from the purchase of gold bonds and all revenue on loans made out of the loan fund which was loaned to eligible members in the order of their application for gold bonds, said bonds being issued and numbered at the home office. (2) After bond had been in force 12 months, the holder might receive all money back paid thereon, less $6 on each bond, with 4 per cent. interest for the average time, upon written notice of the intention to withdraw, and allowing the company 120 days in which to refund. (3) If gold bond was carried to maturity, which was 80 months, the company agreed to pay $500, the face value of each bond. From June 30, 1911, to January 1, 1912, the Prudential Loan & Trust Company had realized from the sale of bonds of this character about $20,000, from over 200 residents of this state, including churches and fraternal organizations. The evidence shows that on Jan-

uary 1, 1912, the company ceased doing business on this plan, but engaged in other business entirely foreign thereto. The officers of the company discovered about this time that they were unable to refund the money received on such gold bonds or to continue this character of business, and thereafter made efforts in other ways to procure money with which to comply with said contracts, but failed.

It is the contention of the surety company that this character of business was not authorized under the statutes of the state, and was outside of the charter powers of the company, and therefore it is not liable upon the bond. Corporations possess the powers expressly conferred upon them by law, and such implied powers as are necessary to enable them to exercise the powers expressly granted; and, if a contract made by a corporation is germane to the purpose for which it is formed, is not in violation of its charter, the public policy of the state . or any statute prohibiting it, and the corporation by its promise induces a party relying thereon to expend money and perform his part of the contract, the corporation is liable upon such contract. *Derr et al. v. Fisher et al.*, 22 Okla. 126, 98 Pac. 978; *Oklahoma Portland Cement Co. v. Anderson et al.*, 28 Okla. 650, 115 Pac. 767; *Overholser et al. v. Oklahoma Interurban Traction Co.*, 29 Okla. 571, 119 Pac. 127.

Chapter 15, art. 7, Rev. Laws 1910, governs the method of organization, and prescribes the manner of conducting business, and enumerates the powers of domestic building and loan associations, and article 8 of said chapter 15 governs the business of foreign building and loan associations in this state. Domestic associations carrying on business only in the county of their domicile are not required

to give bond, but section 1334 provides that where any domestic association carries on its business outside the county in which its principal place of business is located, such association shall be governed and regulated by the **article governing** foreign associations, and by section 1322 of this article such associations are required to file with the Bank Commissioner a copy of their charter, constitution, by-laws, and all other rules and regulations showing their manner of conducting business, together with a statement containing certain other information, **before they shall receive a certificate from such Bank Commissioner** authorizing them to transact business in this state. Section 1321 requires such association to deposit with the State Treasurer annually, to be approved by him, a good and sufficient bond in the sum of $10,000, conditioned that it will fulfill all of its contracts and obligations, entered into with all residents of this state, and will comply with all of the requirements of this article. It is said that the Prudential Company, being a domestic corporation, was without authority to issue the gold bonds held by plaintiff. This was its sole method of conducting business, and, in compliance with section 1322, before it could receive a certificate of authority **to transact such business, it had to file the statement therein** required, showing its manner of conducting business; and **the Southwestern Surety Insurance Company** was charged with knowledge of the contents of this statement and the manner of conducting its business by the Prudential Company at the time the bond was executed, and signed the same in the light of this information, and with the knowledge that business would be conducted in such manner. The provisions of article 8 do not undertake to prescribe the method of transacting business by foreign building

and loan associations, and, the Prudential Company being entitled to the benefits of said article, there was no prohibition therein against said manner of conducting its business; but, on the contrary, said method would be impliedly permitted. Neither is there any express prohibition against such method of doing business under the provisions of article 7, nor is such contract against the public policy of this state, but is closely akin to the ordinary business of building and loan associations, and is a species of contract issued by such associations that by the provisions of chapter 200, Session Laws 1913, p. 445, was expressly recognized and made subject to the supervision of the Bank Commissioner.

The surety company insists that its bond should be strictly construed, and that by so doing said gold bonds would not be embraced within the terms of its liability. The surety bond was executed upon a consideration paid therefor; and the rule which prevailed at common law, requiring a strict construction to the obligations of a surety, does not apply to contracts of this character, but in this state such rule has been abrogated by statute, and the rule declared to be that all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance. Section 1346, Rev. Laws 1910; *Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co.*, 33 Okla. 535, 126 Pac. 556; *Maryland Casualty Co. v. Town of Wellston*, 47 Okla. 417, 148 Pac. 691.

In case of doubt as to the meaning of the terms of the bond, where one construction would render it void at the time of its execution and the other construction would give effect thereto, it would be the duty of the court to adopt that construction which would be most favorable

to the party for whose benefit the bond was intended, and give it such construction as would make it effective. *Taylor v. Ins. Co. of North America,* 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 906; *Capital Fire Ins. Co. v. Carrol et al.,* 26 Okla. 286, 109 Pac. 535; *Southern Surety Company v. Tyler Simpson Co.,* 30 Okla. 116, 120 Pac. 936.

Applying these rules to the bond in question, when the surety company executed the bond and accepted the premium therefor with knowledge of the fact at the time of its execution that the business of the Prudential Company would be conducted in such manner, and guaranteed the performance of all its contracts, and thereby induced residents of this state to purchase said gold bonds, neither the Prudential Company nor the surety company can be heard to question the liability of the Prudential Company upon said gold bonds or of the surety company upon its surety bond for a breach of the terms of said gold bonds. Brandt on Suretyship, sec. 465; *Sinclair & Co. v. Nat'l Surety Co.,* 132 Iowa, 549, 107 N. W. 184; *North British & Merc. Ins. Co. v. Steiger,* 124 Ill. 81, 16 N. E. 95; *Skinner v. Norman,* 165 N. Y. 565, 59 N. E. 309, 80 Am. St. Rep. 776; *Morrison v. Wis. Odd Fellows Mut. L. Ins. Co.,* 59 Wis. 166, 18 N. W. 13; *Gandy v. Orient Ins. Co.,* 52 S. C. 224, 29 S. E. 655; *Board of Com'rs v. Irish-American Bank,* 68 Minn. 470, 71 N. W. 674. The gold bonds held by plaintiff are covered by the terms of the surety bond, and for a breach thereof by the Prudential Company plaintiff would be entitled to recover.

It is said that the surety bond was not approved by the State Treasurer. There is no proof that such was not done, and in the absence of such showing, the law presumes that officers do those things which they are required by law to do; and, inasmuch as the bond was required

to be filed before the certificate of authority to transact business was issued, and it appears that such certificate was issued and business transacted, we will presume that such bond was approved before the issuance of such certificate. *Southern Surety Co. v. Waits,* 45 Okla. 513, 146 Pac. 431.

It is also claimed that the execution of said surety bond is not proven. This issue is not properly presented by the record before us.

An additional contention is made that by the terms of the bond it only guarantees the performance of contracts by the Prudential Company within a year from June 30, 1911, and that after the expiration of twelve months, to wit, on June 30, 1912, no action would lie thereon for a default of the principal occurring thereafter. The Prudential Company became insolvent about the 1st of January, 1912, and was unable to comply with the conditions of its gold-bond contracts, and ceased to do business of this character; and, having become insolvent and unable to continue business within the 12 months covered by the bond, this would constitute a breach of its agreement and mature its obligations to refund the moneys received by it (Brandt on Suretyship, sec. 223; *Knutson v. N. W. Loan & Building Ass'n,* 67 Minn. 201, 69 N. W. 889, 64 Am. St. Rep. 410; *Curtis v. Granite St. Ass'n,* 69 Conn. 6, 36 Atl. 1023, 61 Am. St. Rep. 17; 4 R. C. L. secs. 40, 41), and the fact of insolvency would excuse a demand or notice of intention to withdraw, because such notice or demand would be futile, and the law does not require the doing of a useless thing. The condition of the bond is that the Prudential Company shall and will, during the year commencing June 30, 1911, and ending June 30, 1912, faithfully fulfill all its obligations and contracts

entered into from time to time during said year, and shall and will during said time faithfully comply with all the laws regulating building and loan associations. The conditions imposed by the statute are that the company giving the bond will fulfill all its contracts and obligations entered into with residents of this state, and will comply with all the requirements of the act. To give the language of the bond a literal interpretation would render it ambiguous and nugatory, and relieve the surety from all liability, as by the terms of the gold bonds plaintiff was not entitled to withdraw any amount until after the expiration of one year from the date the bonds were issued, and the company ceased doing business of this character within six months after the giving of the surety bond. The bond sued on being a statutory one, and given in an attempt to comply with the statute, in order to avoid such a result, the court will read into the bond the statutory conditions and construe the same to guarantee the fulfillment of contracts entered into within the year. Brandt on Suretyship, section 105; Pingree on Suretyship, section 676. We are justified in this construction of said bond for the reason that it recites the provisions of the statute requiring the giving thereof, and sets out the conditions required by the statute, and further recites that the Prudential Company intends to transact business in this state in accordance with the provisions of said act, and then follow the conditions under consideration. Thus it is seen that to adopt the views of counsel would bring about a result not contemplated by the statute nor intended by the parties at the time.

For the reasons indicated, the judgment is affirmed.

All the Justices concur.