## UNITED STATES FIDELITY & GUARANTY CO. v. STATE et al.

No. 6033—Opinion Filed Oct. 9, 1917.

(168 Pac. 234.)

(Syllabus.)

1. **Banks and Banking—Depositors' Guaranty Statute — Application to School Fund Deposit.**
Section 7943, Comp. Laws 1909, provided a specific system for the protection of any part of the permanent school fund deposited in any bank or trust company; and the protection extended to general depositors by virtue

of the police power of the state, by virtue of section 323, Comp. Laws 1909, which created the depositors' guaranty fund, did not apply to deposits of the permanent school fund.

## 2. Same—Insolvency of Bank—School Fund Deposit—Distribution of Assets.

Where, in May, 1909, the commissioners of the land office deposited certain moneys belonging to the permanent school fund in a certain institution which thereafter became insolvent and passed into the hands of the bank commissioner on September 29, 1909, who administered its affairs under the banking laws of the state, and where the assets of said institution were insufficient to pay the general depositors, protected by the depositors' guaranty fund, the deposit of the commissioners of the land office was not entitled to share in the assets of said institution.

## 3. Constitutional Law—Due Process of Law —Rights of Surety.

Section 323, Comp. Laws 1909, as construed herein does not deprive a surety who executed a bond under the provision of section 7943, Comp. Laws 1909, securing a temporary deposit of any of the school moneys of the state, and who is compelled to repay same, of its property without due process of law.

## 4. Constitutional Law — Privileges and Immunities — Security for Deposits of School Fund.

An unconstitutional discrimination does not exist by reason of the guaranty of general deposits under section 323 and the security required for deposits of school funds under section 7943.

Error from Superior Court, Oklahoma County; Edward D. Oldfield, Judge.

Action by the State of Oklahoma and the officers composing the Commissioners of the Land Office on relation of J. H. Chambers, their attorney, against the United States Fidelity & Guaranty Company. Judgment for plaintiffs, and defendant brings error. Affirmed

Ames, Chambers, Lowe & Richardson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and Ledbetter, Stuart & Bell, for defendants in error.

HARDY, J. This action was commenced by the state and the officers composing the commissioners of the land office, on the relation of J. H. Chambers, their attorney, against the United States Fidelity & Guaranty Company to recover $50,000 on a bond executed by it as a depository bond for the Columbia Bank & Trust Company. Answer was filed, consisting of a general denial and certain affirmative defenses, to which demurrer was interposed by plaintiffs, and by the court sustained as to all of said defenses except the general denial, and exceptions saved to the ruling of the court. Thereafter the case came on for trial, and resulted in judgment in favor of plaintiffs for the full amount prayed, and defendant brings the case here for review.

It is urged that plaintiffs were entitled to share in the assets of the Columbia Bank & Trust Company, and that defendant was entitled to an assignment of plaintiffs' claim against the Columbia Bank & Trust Company, and that because plaintiffs did not apply the assets which came into their hands by reason of the insolvency of the Columbia Bank & Trust Company, ratably to the payment of the deposit to secure which the bond sued upon was given, that defendant has been proportionally discharged from liability upon its obligation. Counsel insist that previous decisions of this court have declared the law to be that deposits of the character herein involved are not entitled to payment from the depositors' guaranty fund, but that this court has not yet decided the question as to whether such deposits were entitled to share in the distribution of the assets of an insolvent bank or trust company. Section 323, Comp. Laws of 1909, makes it the duty of the bank commissioner, in the event he shall take charge of a bank or trust company, to pay the depositors of the bank or trust company in full, and provides that when the cash available, or that which can be made immediately available, of said bank or trust company, is insufficient to discharge its obligations to depositors, the banking board shall draw from the depositors' guaranty fund and from additional assessments, if required, an amount necessary to make up the deficiency, and gives the state a first lien upon the assets of said institution and all other liabilities against the stockholders, officers, and directors and against all persons, corporations or firms, which may be enforced by the state for the benefit of the depositors' guaranty fund. Construing this statute in a number of cases, the rule has been announced that moneys deposited in an institution by the commissioners of the land office under the provisions of section 7943, Comp. Laws of 1909, were not such deposits as fell within the purview of this section of the statute. Counsel concede that such has been the uniform holding of the court, but contend that such holding is wrong, and should be reversed. The question has been examined, and the rule announced so often, that it may well be considered as the settled views of this court upon that proposition. Columbia Bank & Trust Co. v. U. S. Fidelity

& Guaranty Co., 33 Okla. 535, 126 Pac. 556; Lankford v. Okla. Eng. & Ptg. Co., 35 Okla. 404, 130 Pac. 278; Lovett v. Lankford, 47 Okla 767, 145 Pac. 767; Lankford v. Schroeder, 47 Okla. 1049, 147 Pac. 1049, L. R. A. 1915F, 623; Capitol State Bank v. Western Casualty & Guaranty Co., 47 Okla. 549, 149 Pac. 149.

In the case of Columbia Bank & Trust Company against the United States Fidelity & Guaranty Company, supra, the bank commissioner took possession of the bank and its assets, and thereafter made application to the district court of Oklahoma county for an order authorizing him to sell certain assets of the bank. The United States Fidelity & Guaranty Company filed its petition in intervention, alleging that it was the purpose of the bank commissioner to repay to the state banking board the depositors' guaranty fund, which had been advanced by it, in preference to the deposit secured by the bond of the surety company, and prayed that the bank commissioner be enjoined from paying out any of the assets remaining in his hands to any creditors of the bank in preference to the state and the commissioners of the land office on account of the deposits secured by the bond of said surety company, and that the bank commissioner be restrained from repaying to the banking board the guaranty fund advanced to him, or any part thereof, prior to the payment in full of the deposits secured by said bond. It was stated by the court that one of the questions presented for consideration was whether the deposit of the commissioners of the land office was entitled to participate pro rata in the distribution of the assets of the bank. In discussing this question the contention of the surety company was said to be that the deposit of the commissioners of the land office ought to be treated as all other deposits, and that the commissioners ought to participate pro rata in the distribution of the assets of the bank, and that after the assets were exhausted, if there be a deficit, it ought to be paid out of the guaranty fund, and until the guaranty fund was exhausted the surety should not be called upon to meet the obligation of its bond. The court declined to adopt this view, and in considering section 323, supra, and section 7943, Comp. Laws 1909, held that section 323 was enacted in pursuance of the police power of the state, acting in its sovereign capacity, in behalf of its people and their interest, and not in its own behalf, and that by virtue of said section it was not intended to protect such deposits as here involved by the guaranty fund, and that section 7943 specifically related to the funds of the state itself, and the broad

subject embraced within its purview was the temporary deposit and protection of the permanent school fund until it could be invested in the securities prescribed by law.

This decision determined adversely to the contention of defendants the question as to whether plaintiffs were entitled to participate in the distribution of the assets of the bank. The primary purpose of the bank guaranty law being to guaranty the payment of general deposits, excluding deposits of the character in question, the state is given a first lien upon the assets of the bank for the protection of the guaranty fund, and the bank commissioner is specifically charged with the duty of applying the cash on hand and assets which can be converted into cash to the payment of deposits intended to be secured. It would be reasoning in a circle to say that the deposit of plaintiffs was not entitled to be paid out of the guaranty fund, and yet would be entitled to participate in the assets of the insolvent institution. If that be permitted, the lien of the state for the benefit of the guaranty fund is subordinated to the payment of plaintiffs' deposit, and thus indirectly would be accomplished that which was not the intent of the law, and the purpose of the law be defeated. In Lankford, State Bank Comm., v. Oklahoma Eng. & Ptg. Co., it was said:

"The effect of this statute is to make the state a preferred creditor until any deficiency in the guaranty fund, created by the payment therefrom of the depositors of an insolvent bank, is made up. After that, any remaining assets of the bank become available for the purpose of being prorated and distributed among the general creditors of the bank, in the manner contended for by counsel for defendant in error."

In Capitol State Bank v. Western Casualty & Guaranty Company, the court said:

"The state was bound to protect the general creditors out of the depositors' guaranty fund, and recoup the loss, so far as possible, by the sale of the assets of the failed bank, upon which the statute gave it a preferred lien. If the sale of assets of the failed bank did not realize a sufficient sum to pay any of the creditors of the failed bank, except the general depositors who were protected by the depositors' guaranty fund, it would follow that all other creditors would be compelled to suffer the loss of their claims."

These expressions of the court show that it has uniformly entertained the view that a deposit not protected by the depositors' guaranty fund was not entitled to share in the assets of an insolvent institution until the depositors' guaranty fund had been repaid all sums advanced therefrom. This

appears to be the clear intent and meaning of the statute, and when it is held that the deposit of plaintiffs was not protected by the depositors' guaranty fund, it necessarily follows that the depositors' guaranty fund is to be reimbursed from the assets of the insolvent bank before plaintiffs would be entitled to share in the distribution of the assets; and, the assets being only sufficient to pay 80 per cent. of the deposits, there would remain nothing from which the guaranty fund could be reimbursed, and therefore there were no assets remaining in which plaintiffs were entitled to participate. This being true, plaintiffs had no claim which could be assigned to the defendant under that provision of the bond entitling it to an assignment of plaintiffs' right, and there could be no breach of said condition, unless there was some right which could be assigned. Neither would defendant be released, because plaintiffs had failed to apply the assets of the insolvent institution to the payment of its deposit, because the assets, in the first place, did not go into plaintiffs' hands, and, in the second place, as already demonstrated, they were not entitled to participate in the distribution thereof. Sections 1043 and 1056, Rev. Laws 1910, do not apply to the case at bar; but defendant's rights must be determined under sections 323 and 7943, as construed in former opinions, and applied to a similar state of facts.

This construction of the statutes does not take the property of plaintiffs or defendant without due process of law. Plaintiffs make no such contention, and therefore we pass to this contention, as applied to the defendant. In order for this statute to have this effect, it must be made to appear that defendant has been deprived of some right given it by statute or under its contract. The statutes referred to are as much a part of the bond as if they were specifically written therein or made so by its terms. Columbia Bank & Trust Co. v. U. S. Fidelity & Guaranty Co., 33 Okla. 535, 126 Pac. 556; Southwestern Surety Ins. Co. v. Davis, 53 Okla. 332, 156 Pac. 213. The law was in force at the time the bond was executed and delivered, and the bond was executed in pursuance of the requirements of section 7943, for the purpose of securing the deposits of the plaintiffs, and defendant must be held to have voluntarily executed same for hire in view of the law, and therefore did so with knowledge beforehand that plaintiffs' deposit would not be protected by the depositors' guaranty fund, and would not be permitted to participate in the distribution of the assets of the insolvent institution until the guaranty fund had been reimbursed

for any advances made therefrom. With this view of the case, the contention that the statute deprives defendant of its property without due process of law cannot be maintained, because it appears that no property or contract right has been violated or impaired in the least; but, on the contrary, the statute which entered into and became a part of the contract has been applied and enforced according to its spirit and letter. Neither can it be said that such condition deprives defendant of the equal protection of the law, because of the discrimination between the deposits of plaintiffs and other depositors. The validity of this legislation was sustained in Noble State Bank v. Haskell et al., 22 Okla. 48, 97 Pac. 590, where it was sustained as a valid exercise of the police power of the state. That case was appealed to the Supreme Court of the United States, and affirmed in Noble State Bank against Haskell, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, where it was said that the statute was well within the state's constitutional power.

However, addressing ourselves to the precise point, the mere fact that the distinction is made between general deposits and deposits of the character made by plaintiffs, secured in the manner that such deposit was secured, does not of itself render the legislation obnoxious to the equality clause of the federal Constitution. The power of the Legislature of a state to classify persons and objects in legislation has a wide range of discretion, and while the classification must be reasonable, and not arbitrary, there is no precise application of the rule of reasonableness, and there cannot be an exact exclusion or inclusion of persons or things. The question is, when the classification has been made, whether there is any reasonable ground for it, or whether it is only simply arbitrary, based upon no rule of distinction and entirely unnatural. If the classification be proper and legal, then there is the requisite uniformity in that respect. If the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. Trustees, Executors & Securities Co. v. Hooton, 53 Okla. 530, 157 Pac. 293, 6 L. R. A. 602; German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; Nicol v. Ames, 173 U. S. 509, 19 Sup. Ct. 522, 43 L. Ed. 786; A., T. & S. F. Ry. Co. v. Matthews, 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909; Magoun v. Savings Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037. All of the decisions of this court constru-

ing this law have sustained the classification made.

In Assaria State Bank v. Dolley, 219 U. S. 121, 31 Sup. Ct. 189, 55 L. Ed. 123, the Supreme Court of the United States sustained the depositors' guaranty law of the state of Kansas. One of the contentions there made was that plaintiffs (who were a number of state banks) would theretofore have been entitled to share pro rata in the assets of an insolvent bank to which they had given credit, but after the passage of said law that depositors, with such of their debtors that should come in the guaranty system, would be preferred. In the second paragraph of the syllabus it is stated:

"An unconstitutional discrimination does not result from a preference of ordinary depositors over other creditors, given by a state statute creating a bank depositors' guaranty fund for the purpose of securing the full repayment of deposits in case of the insolvency of any bank contributing to the fund."

Another discrimination in that case was between unincorporated banks and banks not having a surplus of 10 per cent., who were not entitled to the benefits of the act. These discriminations were held to be not fatal, but within the power of the state.

By section 323, under which general deposits were protected by the depositors' guaranty fund, the state prescribed one method of protection for its citizens, and reserved the matter of the protection of the deposits of the school fund by section 7943, where another plan was provided. This classification is not arbitrary, but is based upon good reason. General depositors are citizens of the state, and one of the chief purposes of the law is to secure the currency of checks drawn against such deposits and give security to banking institutions, and prevent, as far as possible, financial depression and loss to the individual. The protection of the public welfare, by making secure the currency of checks and rendering safe the almost compulsory resort of depositors to the banks as the only available means of keeping money on hand, was sufficient reason for the distinction made, and the priority of payment given to general depositors was incidental to the accomplishment of the general object and purposes of the law. The security of the school fund was provided for by requiring the securities enumerated in section 7943, which the state might lawfully require before permitting the funds to be deposited; but general depositors could not exact such security, and yet were all but compelled to avail themselves

of the facilities offered by banking institutions, and it was the purpose of the law to give security for the repayment of such deposits, and the state in the exercise of its police power for the benefit of its citizens could lawfully require this to be done. The reasons enumerated were sufficient to sustain the classification as a valid exercise of the legislative power of the state, and these statutes prescribe the rule by which the rights of the two classes of depositors are regulated, and the general rule invoked can have no application here. The rights of the parties to this litigation are not affected by subsequent changes in the law regulating the depositors' guaranty fund, but must be determined by the law as it existed when the deposit was made, and when the Columbia Bank & Trust Company passed into the hands of the bank commissioner.

The judgment is affirmed.

All the Justices concur.